The WHITE CASTLE LUMBER AND SHINGLE CO., LIMITED

v.

UNITED STATES of America.

BOWIE LUMBER COMPANY, LIMITED

v.

UNITED STATES of America.

JEANERETTE LUMBER AND SHIN-GLE COMPANY, LIMITED

v.

UNITED STATES of America.

Civ. A. Nos. 69-2448 to 69-2450.

United States District Court,
E. D. Louisiana.

Nov. 21, 1972.

Malcolm L. Monroe and Benjamin R. Slater, Jr., of Monroe & Lemann, New Orleans, La., for plaintiffs.

Charles G. Barnett, Atty., Tax Div., Dept. of Justice, Fort Worth, Tex., for the United States.

CHRISTENBERRY, District Judge.

REASONS FOR JUDGMENT

These three consolidated lawsuits are before the court for final judgment, since the parties have entered into a stipulation as to all relevant facts and have submitted the matter to the court on the stipulation, memoranda, and oral arguments. The plaintiff in each action is a business organized under the laws of Louisiana with its principal place of business in New Orleans, Louisiana, and each is seeking to recover taxes it alleges were erroneously and illegally collected by the Internal Revenue Service.

The amounts of money in dispute represent income and personal holding company taxes, and interest thereon, on certain "selection bonus" payments made to the plaintiff corporations pursuant to oil and gas leases each had with third parties. For the tax years in question, 1962, 1963, and 1964, each of the plaintiffs apparently chose to treat these "selection bonus" payments as initial lease bonus payments and, accordingly, claimed deductions for the depletion under the percentage method authorized by Internal Revenue Code of 1954, §§ 611, 613. The Internal Revenue Service, however, disallowed the deductions and assessed the appropriate deficiencies, which each plaintiff has paid in full and with interest.[1] After their timely claims

---

1. The total payments, the correctness of which has also been stipulated by the parties, may be broken down as follows. For the tax years 1962, 1963, and 1964, plaintiff White Castle Lumber and

Shingle Co., Ltd., has paid a total of $14,206.07 (representing an assessment of $11,373.76 plus interest of $2,832.31). Also for the tax years of 1962, 1963, and 1964, Bowie Lumber Co., Ltd., has

for refunds were disallowed, the plaintiffs filed the present suits pursuant to 28 U.S.C. § 1346 (1970), and the three cases were consolidated for trial.

The narrow issue of law before the court is the nature of the "selection bonus" payments made pursuant to the provisions of four mineral leases executed by the plaintiffs. If they are in the nature of initial lease bonuses, it is clear that a portion is depletable by the lessor since it is considered an advance royalty. *Anderson v. Helvering,* 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940); *Herring v. Commissioner,* 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389 (1934); *Driscoll v. Commissioner,* 147 F.2d 493 (5th Cir. 1945). But, if they are in the nature of delay rentals, it is just as clear that a portion is not deductible since they are considered rent. *Houston Farms Development Co. v. United States,* 131 F.2d 577 (5th Cir. 1942); *Commissioner v. Wilson,* 76 F.2d 766 (5th Cir. 1935); Treas.Reg. § 1.612–3 (c)(2).

To determine the true nature of the "selection bonus" payments under consideration here, reference must be had to the particular language of the leases, but, because these four leases are practically identical, only the pertinent parts of that executed by plaintiff White Castle Lumber and Shingle Co., Ltd., will be quoted as an example. After reciting the initial consideration (also referred to as the "down cash payment"), the tracts covered by the lease, and the royalty agreements, the lease provides:

"V. This lease shall terminate as to both parties twelve (12) months from the date hereof (hereinafter referred to as 'selection date'), unless on or before said date Lessee has, in writing, elected to retain this lease in whole or in part. If Lessee should so elect to select and retain all or any part of the acreage covered hereby, Lessee shall pay or tender to Lessor or to the credit of Lessor in the depository

named herein, the sum of $50.00 per acre on the lands originally covered by this lease, even though Lessee has elected to select and retain less than 100% of such acreage. Said payment shall be a selection bonus and shall be a prerequisite under all circumstances to the continuance of this lease in effect after the selection date, and shall extend the terms of this lease for twelve (12) months following the selection date."

The quoted paragraph next provides for termination twelve months from the selection date if drilling operations have not been commenced unless the lessee pays a stipulated "rental" per acre (the classical delay rental provision), and it concludes with the following sentence:

"The down cash payment and selection bonus are consideration for this lease according to its terms and shall not be allocated to a mere rental for a period."

I find that the "selection bonus" payments outlined above possess all the critical characteristics of a delay rental and none of a true bonus. This "selection bonus" accrues by the mere lapse of time like any other rent, and, by the explicit terms of the lease itself, payment of the amount specified "shall extend the terms of this lease for twelve (12) months following the selection date." It is clearly a rental under the jurisprudence of this Circuit. *See Houston Farms Development Co. v. United States, supra,* 131 F.2d at 579; *Commissioner v. Wilson, supra,* 76 F.2d at 769. *See also* 4 J. Mertens, Law of Federal Income Taxation § 24.27, at 128; K. Miller, Oil and Gas Federal Income Taxation at 61, 279 (1972). Moreover, this "selection bonus" fits within the definition of "delay rental" provided in the Treasury Regulations applicable to the tax years in question:

§ 1.612–3 *Depletion; treatment of bonus and advanced Royalty*

.    .    .    .    .    .

---

paid a total of $32,380.62 (representing an assessment of $24,866.94 plus interest of $7,513.68). For the tax years 1962 and 1964, Jeanerette Lumber and Shingle

Co., Ltd., through credits as well as cash, has paid a total of $73,097.22 (representing an assessment of $56,930.03 plus interest of $16,167.19).

*(c) Delay rental.* (1) A delay rental is an amount paid for the privilege of deferring development of the property and *which could have been avoided by abandonment of the lease,* or by commencement of development operations, or by obtaining production. (Emphasis added.)

.    .    .    .    .    .

Indeed, the parties have stipulated the obvious fact that "[u]nder the terms of the lease agreements, the lessees could avoid the payments designated therein as selection bonuses only by surrendering the leased premises prior to the dates on which such payments became due." And, finally, it is this same characteristic of these payments—the fact that they can be avoided—that disqualifies them from being characterized as true bonuses, which are fixed and unavoidable payments. *See Lambert v. Jefferson Lake Sulphur Co.,* 236 F.2d 542 (5th Cir. 1956); 4 J. Mertens, Law of Federal Income Taxation § 24.24, at 112; P–H Oil and Gas Taxes Par. 1007.2, at 1105. I hold the "selection bonus" payments under consideration here to be in the nature of delay rentals, and they are not, therefore, subject to deductions for depletion under the Internal Revenue Code.

Judgment will be entered accordingly.