DOROTHY COCKBURN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. C. COCKBURN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27421, 27422.    Promulgated April 13, 1951.

*J. L. Webb, Esq.*, for the petitioners.
*John W. Alexander, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The stipulated facts show, among other things, that petitioners reported on their returns for the year 1942 the receipt of $291,250 ($386,250 minus $95,000) as being income from "sale price of lease" and reduced this figure by claimed expenses of sale aggregating $16,387.10. After deducting this $16,387.10 as expenses of sale, petitioner reported $274,862.90 as long term capital gain from this part of the transaction. Petitioners now abandon their contention that the $274,862.90 was capital gain.

This abandonment by petitioners of their former position in this respect is in conformance with the Supreme Court's decisions in *Burnet* v. *Harmel*, 287 U. S. 103, and *Hogan* v. *Commissioner*, 141 F. 2d 92. Petitioners have not, however, abandoned their contention that the $16,387.10 expenses incurred in the assignment of the lease to Gravis is allowable as a deductible business expense. Petitioners' primary contention is that these expenses aggregating $16,387.10 were expenses incurred in the disposition of property and are, therefore, deductible. Of course, if it could be held that the assignment of the lease by Cockburn to Gravis was a sale, the $400 engineering fees, $424.60 revenue stamps and $15,562.50 commission, all aggregating $16,387.10, would be deductible as expenses of the sale because there can be no question but that petitioner was in the business of dealing in oil wells and oil leases. The Commissioner does not contend otherwise. However, it cannot be held that the assignment from Cockburn to Gravis was a sale, except as to the tangible equipment which was sold for $95,000. That $95,000 is not in controversy. The balance of the consideration which petitioner received was for a sublease. *Palmer* v. *Bender*, 287 U. S. 551.

The Commissioner has determined that the $16,387.10 in question represents capital expenditures by petitioner in the acquiring of the rights which he obtained under the contract with Gravis and must be recovered through depletion and cannot be deducted as business expenses. Among other cases relied upon by respondent to sustain his determination, he cites *Bonwit Teller & Co.*, 17 B. T. A. 1019, affirmed on this point, 53 F. 2d 381, and *L. S. Munger*, 14 T. C. 1236. While the facts in the *Bonwit Teller* case and in the *L. S. Munger* case are not the same as here, nevertheless, we think they support in principle the determination which respondent has made.

Since the petitioners received depletion allowances of $80,093.75 in the year 1942, and unspecified amounts in the years 1943 and 1944, they have fully recovered any outlay they may have had in connection with the execution of the sublease with Gravis. Petitioners lay much stress in their briefs on the fact that in reserving to themselves three thirty-seconds of the oil and gas to be produced by Gravis as an overriding royalty, they acquired nothing which they did not already own. Petitioners in arguing this point in their brief say:

\* \* \* In the instant case, the Taxpayers' overriding royalty was in no manner a factor that could have been attributed to any act of the negotiating broker because at the time of the sale or the *disposition* of the lease, the Taxpayers had their three thirty-seconds (³⁄₃₂) and withheld it. It was a producing royalty flowing from twenty wells that had been discovered by the Taxpayers and which the Taxpayers' capital had developed. Neither the broker nor Gravis added anything to the Taxpayers' assets which the Taxpayers did not theretofore enjoy.

We think the above quotation from petitioners' brief does not tell the whole story. In addition to the overriding royalty of three thirty-seconds of all the oil, gas, and other minerals reserved by petitioner in the sublease with Gravis, there was also provided an oil payment of $112,500 which is described in the assignment to Gravis as follows:

There is reserved as royalty to H. C. Cockburn, assignor herein, his heirs and assigns, on all oil and gas which may be produced from wells located on said premises and which well or wells are then produced from a depth below forty two hundred (4200) feet in addition to the above overriding royalty, an undivided three two-fifty-sixths (3/256ths) of all the oil and gas produced from each such well or wells producing below said depth of forty two hundred (4200) feet, to be delivered free of cost, to the said H. C. Cockburn, assignor herein, when, as, and if produced, in like manner as the landowner's royalty provided in the original lease, until the proceeds derived from said proportion of such production on the basis of the then market value at posted prices shall aggregate the sum of One Hundred Twelve Thousand Five Hundred $112,500.00) Dollars, subject to further terms and conditions hereof, and provided further that this provision shall be a covenant running with the lease assignment and shall follow the ownership of said lease and each successive owner, of all or any part of the land covered by this assignment.

Whatever amounts petitioners should receive from this contingent oil payment of $112,500 would be ordinary income to petitioners, subject to depletion; but they must also look to depletion for the recovery of their cost or other basis of this contingent oil payment. *T. W. Lee*, 42 B. T. A. 1217, affd., 126 F. 2d 825.

We think that the Commissioner's determination that the $16,387.10 in question cannot be deducted as a business expense but represents capital expenditures in obtaining certain benefits under an oil and gas sublease and must be recovered by way of depletion should be sustained. We so hold.

*Decisions will be entered under Rule 50.*