289 F.2d 20
 Frank COWDEN, Sr., and wife Gladys Cowden et al., Petitioner-Respondent,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Petitioner,
COMMISSIONER OF INTERNAL REVENUE, Respondent-Petitioner,
v.
Frank COWDEN, Sr., and wife Gladys Cowden et al., Petitioner-Respondent.
 No. 18294.
 United States Court of Appeals Fifth Circuit.
 April 12, 1961.
 
 Richard S. Brooks, Whitaker & Brooks, Midland, Tex., for petitioners-respondents, Frank Cowden, Sr., and wife, Gladys Cowden, Frank Cowden, Jr., and wife, June Cowden, Elizabeth Ann Cowden Walter, Courtney Cowden and wife, Margaret P. Cowden.
 Harold M. Seidel, Melva M. Graney, Lee A. Jackson, Dept. of Justice, Washington, D. C., Howard A. Heffron, Act. Asst. Atty. Gen., Charles K. Rice, Asst. Atty. Gen., Claude R. Marshall, Atty., I. R. S., Hart H. Spiegel, Chief Counsel, I. R. S., Washington, D. C., for respondent.
 Before TUTTLE, Chief Judge, and RIVES and JONES, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 We here review a decision of the Tax Court by which a determination was made of federal income tax liability of Frank Cowden, Sr., his wife and their children, for the years 1951 and 1952. In April 1951, Frank Cowden, Sr. and his wife made an oil, gas and mineral lease for themselves and their children upon described lands in Texas to Stanolind Oil and Gas Company. By related supplemental agreements, Stanolind agreed to make "bonus" or "advance royalty" payments in an aggregate amount of $511,192.50. On execution of the instruments $10,223.85 was payable, the sum of $250,484.31 was due "no earlier than" January 5 "nor later than" January 10, 1952, and $250,484.34 was stipulated to be paid "no earlier than" January 5 "nor later than" January 10, 1953. One-half of the amounts was to be paid to Frank Cowden, Sr. and his wife, and one-sixth was payable to each of their children. In the deferred payments agreements it was provided that:
 
 
 2
 "This contract evidences the obligation of Stanolind Oil and Gas Company to make the deferred payments referred to in subparagraphs (b) and (c) of the preceding paragraph hereof, and it is understood and agreed that the obligation of Stanolind Oil and Gas Company to make such payments is a firm and absolute personal obligation of said Company, which is not in any manner conditioned upon development or production from the demised premises, nor upon the continued ownership of the leasehold interest in such premises by Stanolind Oil and Gas Company, but that such payments shall be made in all events."
 
 
 3
 On November 30, 1951, the taxpayer assigned the payments due from Stanolind in 1952 to the First National Bank of Midland, of which Frank Cowden, Sr. was a director. Assignments of the payments due in 1953 were made to the bank on November 20, 1952. For the assignment of the 1952 payments the bank paid the face value of the amounts assigned discounted by $257.43 in the case of Frank Cowden, Sr. and his wife, and $85.81 in the case of each of their children. For the amounts due in 1953 the discounts were $313.14 for Frank Cowden, Sr. and his wife, and $104.38 for each of their children. The taxpayers reported the amounts received by them from the assignments as long-term capital gains. The Commissioner made a determination that the contractual obligations of Stanolind to make payments in future years represented ordinary income, subject to depletion, to the extent of the fair market value of the obligations at the time they were created. The Commissioner computed the fair market value of the Stanolind obligations, which were not interest bearing, by the deduction of a discount of four per cent. on the deferred payments from the date of the agreements until the respective maturities. Such computation fixed a 1951 equivalent of cash value of $487,647.46 for the bonus payments, paid in 1951 and agreed to be paid thereafter, aggregating $511,192.50. The Commissioner determined that the taxpayers should be taxed in 1951 on $487,647.46, as ordinary income.
 
 
 4
 A majority of the Tax Court was convinced that, under the particular facts of this case, the bonus payments were not only readily but immediately convertible to cash and were the equivalent of cash, and had a fair market value equal to their face value. The Tax Court decided that the entire amounts of the bonus payments, $511,192.50, were taxable in 1951, as ordinary income. Cowden v. Commissioner of Internal Revenue, 32 T.C. 853. Two judges of the Tax Court dissented.
 
 
 5
 The Tax Court stated, as a general proposition, "that executory contracts to make future payments in money do not have a fair market value." The particular facts by which the Tax Court distinguishes this case from the authorities by which the general proposition is established are, as stated in the opinion of the majority
 
 
 6
 "* * * that the bonus payors were perfectly willing and able at the time of execution of the leases and bonus agreements to pay such bonus in an immediate lump sum payment; to pay the bonus immediately in a lump sum at all times thereafter until the due dates under the agreements; that Cowden, Sr., believed the bonus agreements had a market value at the time of their execution; that a bank in which he was an officer and depositor was willing to and in fact did purchase such rights at a nominal discount; that the bank considered such rights to be bankable and to represent direct obligations of the payor; that the bank generally dealt in such contracts where it was satisfied with the financial responsibility of the payor and looked solely to it for payment without recourse to the lessor and, in short, that the sole reason why the bonuses were not immediately paid in cash upon execution of the leases involved was the refusal of the lessor to receive such payments." These findings are, in some respects, challenged by the taxpayers as being unsupported by the evidence. Our review of the record has led us to the conclusion that the findings of fact made by the Tax Court are sustained by substantial evidence. However, we must observe that the statement of Frank Cowden, Sr. that the contract obligations had "some market value" is not to be regarded as binding upon him and the other taxpayers with respect to the decisive issue in the case.
 
 
 7
 The dissenting opinion of the Tax Court minority states that the conclusion reached by the majority "is in effect that the taxpayers are not free to make the bargain of their choice," and one of the taxpayers' specifications of error is that the Tax Court "erred in holding that taxpayers are not free to make the bargain of their choice."
 
 
 8
 The Tax Court majority distinguishes the authorities cited and relied upon by the taxpayers upon several grounds. The Tax Court seemingly lays stress upon the fact, found to be here present, that the bonus payor was willing and able to make the entire bonus payment upon the execution of the agreement. It is said by the taxpayers that the Tax Court has held that a constructive receipt, under the equivalent of cash doctrine, resulted from the willingness of the lessee to pay the entire bonus on execution of the leases and the unwillingness of the taxpayers, for reasons of their own,[1] to receive the full amount. If this be the effect of the Tax Court's decision there may be some justification for the criticism appearing in the opinion of the minority and the concern expressed elsewhere.[2]
 
 
 9
 It was said in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L. Ed. 596, 97 A.L.R. 1355, and recently repeated in Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 135, 5 L.Ed.2d 128, "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." See Rupe Investment Corporation v. Commissioner of Internal Revenue, 5 Cir., 1959, 266 F.2d 624; Williams v. United States, 5 Cir. 1955, 219 F.2d 523. As a general rule a tax avoidance motive is not to be considered in determining the tax liability resulting from a transaction. Sun Properties v. United States, 5 Cir., 220 F.2d 171; Caldwell v. Campbell, 5 Cir., 1955, 218 F.2d 567; Roscoe v. Commissioner of Internal Revenue, 5 Cir., 1954, 215 F.2d 478. The taxpayers had the right to decline to enter into a mineral lease of their lands except upon the condition that the lessee obligate itself for a bonus payable in part in installments in future years, and the doing so would not, of itself, subject the deferred payments to taxation during the year that the lease was made. Nor would a tax liability necessarily arise although the lease contract was made with a solvent lessee who had been willing and able to pay the entire bonus upon the execution of the lease.
 
 
 10
 While it is true that the parties may enter into any legal arrangement they see fit even though the particular form in which it was cast was selected with the hope of a reduction in taxes, it is also true that if a consideration for which one of the parties bargains is the equivalent of cash it will be subjected to taxation to the extent of its fair market value. Whether the undertaking of the lessee to make future bonus payments was, when made, the equivalent of cash and, as such, taxable as current income is the issue in this case. In a somewhat similar case, decided in 1941, the Board of Tax Appeals stated that "where no notes, bonds, or other evidences of indebtedness other than the contract were given, such contract had no fair market value." Kleberg v. Commissioner, 43 B.T.A. 277, quoting from Titus v. Commissioner, 33 B.T.A. 928. In 1959 the Tax Court held that where the deferred bonus payments were evidenced by promissory notes the equivalent of cash doctrine might be applicable. Barnsley v. Commissioner, 31 T.C. 1260. There the Tax Court said:
 
 
 11
 "It is, of course, possible under an oil and gas lease containing proper provisions to have a bonus payable and taxable in installments, Alice G. K. Kleberg, 43 B.T.A. 277. The case before us does not constitute such an arrangement. In the Kleberg case the contractual agreement was to pay a named amount in two payments as bonus. It was not a case like the one here where cash and negotiable notes, the latter being the equivalent of cash, representing the bonus were received in the same year by the taxpayer."
 
 
 12
 The test announced in Kleberg, from which Barnsley does not depart, seems to be whether the obligation to make the deferred payments is represented by "notes, bonds, or other evidences of indebtedness other than the contract". In this case, the literal test of Kleberg is met as the obligation of Stanolind to the Cowdens was evidenced by an instrument other than the contract of lease. This instrument is not, however, one of the kind which fall into the classification of notes or bonds. The taxpayers urge that there can be no "equivalent of cash" obligation unless it is a negotiable instrument. Such a test, to be determined by the form of the obligation, is as unrealistic as it is formalistic. The income tax law deals in economic realities, not legal abstractions,[3] and the reach of the income tax law is not to be delimited by technical refinements or mere formalism.[4]
 
 
 13
 A promissory note, negotiable in form, is not necessarily the equivalent of cash. Such an instrument may have been issued by a maker of doubtful solvency[5] or for other reasons such paper might be denied a ready acceptance in the market place. We think the converse of this principle ought to be applicable. We are convinced that if a promise to pay of a solvent obligor is unconditional and assignable, not subject to set-offs, and is of a kind that is frequently transferred to lenders or investors at a discount not substantially greater than the generally prevailing premium for the use of money, such promise is the equivalent of cash and taxable in like manner as cash would have been taxable had it been received by the taxpayer rather than the obligation. The principle that negotiability is not the test of taxability in an equivalent of cash case such as is before us, is consistent with the rule that men may, if they can, so order their affairs as to minimize taxes,[6] and points up the doctrine that substance and not form should control in the application of income tax laws.[7]
 
 
 14
 The Tax Court stressed in its findings that the provisions for deferring a part of the bonus were made solely at the request of and for the benefit of the taxpayers, and that the lessee was willing and able to make the bonus payments in cash upon execution of the agreements. It appears to us that the Tax Court, in reaching its decision that the taxpayers had received equivalent of cash bonuses in the year the leases were executed, gave as much and probably more weight to those findings than to the other facts found by it. We are persuaded of this not only by the language of its opinion but because, in its determination of the cash equivalent, it used the amounts which it determined the taxpayers could have received if they had made a different contract, rather than the fair market value cash equivalent[8] of the obligation for which the taxpayers had bargained in the contracts which they had a lawful right to make. We are unable to say whether or not the Tax Court, if it disregarded, as we think it should have done, the facts as it found them as to the willingness of the lessee to pay and the unwillingness of the taxpayers to receive the full bonus on execution of the leases, would have determined that the deferred bonus obligations were taxable in the year of the agreements as the equivalent of cash. This question is primarily a fact issue. Glenn v. Penn, 6 Cir., 1958, 250 F.2d 507; Kasper v. Banek, 8 Cir., 1954, 214 F.2d 125. There should be a remand to the Tax Court for a reconsideration of the questions submitted in the light of what has been said here.
 
 
 15
 If the deferred bonus payments were the equivalent of cash and as such taxable as ordinary income during the year of receipt, the income so taxable would be subject to depletion. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Campbell v. Fasken, 5 Cir., 1959, 267 F.2d 792; Commissioner of Internal Revenue v. Fleming, 5 Cir., 1936, 82 F.2d 324.
 
 
 16
 Frank Cowden, Sr., and Gladys Cowden, his wife, purchased and affixed to the Stanolind lease internal revenue documentary tax stamps in the amount of $562.50. The Cowdens claimed a deduction for this amount in their 1951 tax returns. The Commissioner disallowed the deduction. The Tax Court, following its prior holding in Cockburn v. Commissioner, 16 T.C. 775, sustained the Commissioner. The Tax Court declined to follow Naylor v. Dunlap, D.C. N.D.Tex., 49-2 U.S.T.C. par. 9446, in which it was held that the cost of revenue stamps paid by an assignor of an oil and gas lease is a deductible expense. The Tax Court's determination is challenged by the taxpayers and is before us for review. As a general rule the expense incurred by a lessor in entering into a leasehold arrangement is a capital expenditure. Mertens, Law of Federal Income Taxation, Ch. 25, p. 108, § 25.28. Cf. Central Bank Block Association v. Commissioner of Internal Revenue, 5 Cir., 1932, 57 F.2d 5.
 
 
 17
 Although there are many differences between the conventional leases of real property and oil and gas leases, these differences do not call for a different rule with respect to the deduction of business expenses. The district court in the case of Naylor v. Dunlap, supra, placed its decision on the ground that the lessor did not get any benefit from his expenditure. This point the taxpayers urge here, asserting that as lessors they acquired no property right upon the making of the leases. Under an oil and gas lease, such as is before us in this case, the lessor acquires rights which he did not have before, contingent though they may be in some respects, and these rights are, we think, property rights. See Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489. We see no error in the disallowance of the stamp taxes as a business expense deduction.
 
 
 18
 For further proceedings in keeping with the conclusions here expressed, the decision of the Tax Court is reversed and the cause is remanded.
 
 
 19
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 It is not denied that a desire to save taxes was the sole purpose for the taxpayers' insistence that payment be postponed
 
 
 [2]
 9 Oil & Gas Tax Q. 122; 49 A.B.A.J. 1205; 59 Colum.L.Rev. 1237; 8 Tax Fortnighter 835; 11th Ann.S.W.Leg. Found.Inst.Oil & Gas Law & Taxation 651
 
 
 [3]
 Commissioner of Internal Revenue v. Southwest Exploration Company, 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347
 
 
 [4]
 United States v. Joliet & Chicago Railroad Company, 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658
 
 
 [5]
 Board v. Commissioner, 18 B.T.A. 650
 
 
 [6]
 Cf. Atlantic Coast Line Railroad Company v. Phillips, 332 U.S. 168, 67 S.Ct. 1584, 91 L.Ed. 1977, 173 A.L.R. 1; Bullen v. State of Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830
 
 
 [7]
 United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Morsman v. Commissioner of Internal Revenue, 8 Cir., 1937, 90 F.2d 18, 113 A.L.R. 441
 
 
 [8]
 Computed by the Commissioner by discounting the obligations at a 4 per cent. rate