W. D. HOLBROOK AND BETTY K. HOLBROOK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent M. D. CHILDERS, JR., AND M. H. CHILDERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holbrook v. Commissioner
Docket Nos. 579-73 and 5710-73.
United States Tax Court
T.C. Memo 1975-294; 1975 Tax Ct. Memo LEXIS 82; 34 T.C.M. (CCH) 1283; T.C.M. (RIA) 750294; September 22, 1975. Filed J. Randall Groves, for the petitioners. Gary F. Walker, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: In these consolidated proceedings respondent determined the following deficiencies *83 in income tax against petitioners: Docket Petitioner
No.
Year
Deficiency
W. D. Holbrook and
Betty K. Holbrook
579-73
1968
$3,565.06
M. D. Childers, Jr.,
and M. H. Childers
5710-73
1969
2,323.75
1970
2,302.00 The sole issue presented is whether respondent erred in determining that petitioners received ordinary income on the receipt of payments or credits with respect to certain promissory notes received in exchange for their interests in Neosho, Ltd., a limited partnership. To enable us to answer this question we must first determine whether or not the transfer of the promissory notes constituted completed and closed transactions. FINDINGS OF FACT Some of the facts have been stipulated and these stipulations are adopted as a part of our findings. Petitioners W. D. Holbrook (hereinafter referred to as Holbrook) and Betty K. Holbrook, husband and wife, and petitioners M. D. Childers, Jr. (hereinafter referred to as Childers) and M. H. Childers, husband and wife, all resided in Charlotte, N.C., at the time of the filing of their respective petitions with this Court. During the years in issue petitioners timely filed their *84 respective income tax returns with the Internal Revenue Service Center at Chamblee, Ga.
In 1965 Clyde G. Kissinger (hereinafter referred to as Kissinger), the president of the Colorado Drilling Company (hereinafter referred to as CDC), a corporation organized under the laws of the State of Colorado, caused that corporation to form a limited partnership known as Neosho, Ltd. (hereinafter referred to as Neosho). The partnership consisted of one general partner, CDC, and 17 limited partners. Holbrook and Childers, two of the limited partners, purchased interests of ten percent and five percent, respectively. Neosho was engaged in the general oil and gas business including secondary recovery operations known as water floods. Between the date of purchase of their limited interests in 1964 and October 1, 1968, Holbrook and Childers made various contributions to their capital accounts and took deductions representing operating losses generated by Neosho, so that, as of October 1, 1968, their bases in their interests for income tax purposes were $2,198.11 and $970, respectively. On October 1, 1968, Holbrook and Childers transferred their respective interests to Kissinger. [1] In return *85 Holbrook and Childers received noninterest-bearing installment promissory notes [2] in the amounts of $17,345.37 and $8,450, respectively. *86 In late 1968 the note received by Holbrook was endorsed by him and transferred to Kissinger who applied the note in equivalent amounts to Holbrook's accounts owed to Kissinger Petroleum Corporation and Kissinger Petroleum, Ltd. In addition to these credits, Kissinger also credited $3,663.74 to Holbrook's business accounts in other business ventures for a total of $21,009.11. In 1969 and in 1970 Childers received cash payments in the amount of $4,225 each from Kissinger pursuant to the terms of his note. On October 1, 1968, all of the other partnership interests were also transferred and the partnership was terminated. Neither the limited partnership agreement, CDC or Kissinger guaranteed any of the limited partners against loss. OPINION Petitioners submit that they sold their respective interests to Kissinger in 1968 and that under section 741[3] they are entitled to long-term capital gain treatment. They further submit that the sales were complete and closed transactions in 1968. *87 Respondent argues that the transactions were sales only to the extent of the fair market value of each petitioner's interest. The amounts received in excess of the fair market value, it is submitted, were in substance reimbursements of prior losses deducted by petitioners and thus should be taxed as ordinary income under tax benefit principles. He further argues that the promissory notes were not susceptible to valuation and that, therefore, the transactions did not close upon the receipt of the promissory notes. With respect to Holbrook it is clear that the transaction became completed in 1968. His transfer of the note back to Kissinger effectively closed that transaction. Thus 1968 is the proper year for taxability. The issue as to when the transaction became complete or closed with respect to Childers presents a somewhat different picture. Unlike Holbrook, Childers retained his promissory note and received payments thereon in 1969 and 1970. In passing judgment we must first determine whether petitioner established that the receipt of the promissory note constituted an "amount realized" in 1968. Section 1001. If so, we must then determine whether Childers established that the *88 fair market value of the note equalled its face value. The burden of proof is upon petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.Only if this petitioner can prove the above two points can he avoid the deficiencies determined by respondent. See Warren Jones Co.,60 T.C. 663 (1973), on appeal (9th cir. Jan. 4, 1974). See also section 6214(b). [4] Pursuant to that provision we have no jurisdiction over the taxable year 1968 as to this petitioner. Section 1.1001(a), Income Tax Regulations, sets forth the proposition that "The fair market *89 value of property is a question of fact, but only in rare and extraordinary cases will property be considered to have no fair market value." In the peculiar context of this case, respondent, in his notice of deficiency, determined that Childers is taxable upon the receipt of the payments on the note, not upon the receipt of the note. Since respondent's notice of deficiency is clothed with a presumption of correctness, petitioner has the burden of overcoming the presumption in order to prevail. In our judgment petitioner has not overcome the presumption and we hold that the receipt of the promissory note did not constitute an amount realized in 1968. Warren Jones Co.,supra;Estate of Clarence W. Ennis,23 T.C. 799 (1955); Nina J. Ennis,17 T.C. 465 (1951); Dudley T. Humphrey,32 B.T.A. 280 (1935). Compare Cowden v. Commissioner,289 F. 2d 20 (5th Cir. 1961), reversing 32 T.C. 853 (1959). See generally Haley, "The Application of Section 1001 to Deferred Payment Sales of Property," 28 Tax Lawyer 303 (1975). Petitioner attempted to establish that the note was marketable and had a *90 fair market value in its face amount through the testimony of a witness who had known Kissinger, the maker, primarily socially, since 1967--one year before the note was made--who had no business dealings with Kissinger and whose testimony was based solely on Kissinger's general reputation in the oil industry. Such vague testimony with respect to the financial standing of the maker does not constitute sufficient evidence with respect to marketability and fair market value to enable petitioner to meet his burden of proof. The fact that Holbrook was able to dispose of his note at face value does not help petitioner Childers' situation since this was a mere exchange of the note between the maker (Kissinger) and Holbrook. That transfer did not establish that the note had a fair market value and that such value was equal to the face amount. The fact that Childers' note was paid off by 1970 does not establish its marketability or fair market value at the time of its delivery in 1968. Since the receipt of the note did not close the transaction, payments on the note in 1969 and 1970 constituted taxable events to petitioner Childers. See *91 Warren Jones Co.,supra;Nina J. Ennis,supra.
The final question facing us relates to the characterization, for tax purposes, of the cancellation of Holbrook's note and the payments on the Childers' note. As previously noted, petitioners contend that they should be entitled to capital gain treatment. Respondent, on the other hand, argues that in substance petitioners were reimbursed for their investments. He submits that to the extent a sale occurred it was only to the extent of petitioners' bases in the partnership. The remainder of the amounts received, it is contended, constitute a recovery of partnership losses allocated to Holbrook and Childers and deducted on their tax returns, and should be treated as ordinary income under tax benefit principles. We are not persuaded by respondent's arguments. Cases such as Johnson v. Commissioner,495 F. 2d 1079 (6th Cir. 1974), affd. 59 T.C. 791 (1973); Commissioner v. Anders,414 F. 2d 1283 (10th Cir. 1969), reversing *92 48 T.C. 815 (1967); and Herman E. Londagin,61 T.C. 117 (1973), are not in point. We can find no compelling authority to apply tax benefit principles to this situation. We think the situation here contrasts to that in our recently court reviewed case of Estate of David B. Munter,63 T.C. 663 (1975), wherein we held that the tax benefit rule applies where the identical item which had been previously expensed is later recovered. Here, there was no recovery of the operating losses as such. The recovery, if it be called that, is of the investment, a capital asset, not of the losses. Compare Fribourg Navigation Co., Inc. v. Commissioner383 U.S. 272 (1966). It is true that the operating losses reduced petitioners' bases but it does not follow that the payments for their interests in excess of the bases constitute ordinary income. Nothing in the Code suggests that to the extent losses reduce basis, that amount should be taxed as ordinary income if recovered on the sale of the interest. Compare *93 Arrowsmith v. Commissioner,344 U.S. 6 (1952). On the contrary, section 741 specifically provides that except as provided in section 751 gain from the sale of a partnership interest shall be considered as gain from the sale of a capital asset. Under section 751 only that portion of the partner's gain which is attributable to his share of the partnership's unrealized receivables and substantially appreciated inventory is treated as ordinary income. Section 751 does not produce ordinary income, however, to the extent that a partner has reduced his basis due to operating losses incurred by the partnership. Although petitioners have the burden of proof, in our judgment they have overcome the presumption of correctness in respondent's determination and presented a prima facie case in support of a sale. This is not a situation involving a sham. [5] As we interpet the evidence presented, it appears that Kissinger offered to buy back all of the limited partners' interests at their cost, [6] which offers were accepted. Although the fair market value of the two interests herein was not established, [7] in our judgment petitioners have presented a prima facie case of sale. *94 The fact that the sale price may be greater than the fair market value does not prevent a finding that a sale in fact occurred. Cf. Commissioner v. Brown,380 U.S. 563 (1965). *95 Accordingly, we find that Holbrook properly reported the difference between the face amount of his note and his adjusted basis as long-term capital gain. With respect to Childers, he erred in failing to treat the payments received in each year as capital gain to the extent the amount received exceeded his partnership basis as allocated to each payment. Compare Burnet v. Logan,283 U.S. 404 (1931). Decision will be entered for the petitioner in Docket No. 579-73. Decision will be entered under Rule 155 in Docket No. 5710-73.
Footnotes
1. The transfer agreement between Holbrook and Kissinger is set forth below: THIS ASSIGNMENT, made as of October 1, 1968, from DR. W. D. HOLBROOK, herein referred to as "Assignor", to CLYDE G. KISSINGER, herein referred to as "Assignee". WITNESSETH: In consideration of the sum of Ten ($10.00) Dollars, and other good and valuable consideration, received by Assignor from Assignee, Assignor does hereby grant, bargain, sell, assign, transfer and convey unto Assignee a Ten (10%) Percent interest in and to a limited partnership known as Neosho Ltd., created by a limited partnership agreement between Colorado Drilling Company, as general partner, and Julian Albergotti, Jr., Robert H. Benfield, Charles Brown, Melvin Childers, S. W. Clark, Claud T. David, Doris Flowers as Flowers Investment Group, E. Reed Gaskin, Paul G. Donner, John Harloe, Henry C. Harrelson, Jr., Nash A. Glaze, The Casual Shop, Inc., W. D. Holbrook, William W. Hopson, George Mundorf and Richard Ross. This Assignment is of the full percentage interest presently owned by Assignor and includes the proportionate share of the profits or other compensation by way of income as of February 1, 1968 which Assignor, as a limited partner, might otherwise have received under the terms of the said partnership agreement, as well as all other rights, interests and privileges of Assignor as a limited partner. TO HAVE AND TO HOLD unto Assignor, its successors and assigns forever in accordance with the provisions of the said Limited Partnership. IN WITNESS WHEREOF, Assignor has executed this Assignment as of the date and year first stated above. The wording of Childers' agreement was substantially the same. ↩
2. Kissinger's promissory note to Holbrook is set forth below: $17,345.37 October 1, 1968 After date, for value received, the undersigned promises to pay to the order of DR. W. D. HOLBROOK, the sum of Seventeen Thousand, Three Hundred Forty-five and 37/100 Dollars, without interest. The said amount is payable in two (2) equal annual installments of one-half (1/2) each of the principal amount on October 31 of calendar years 1969 and 1970. Any failure to pay any installment when due shall cause the whole note to become due and payable at once, and it shall not be necessary for the holder to declare the same due, but he may proceed to collect the same as if the whole was due and payable by its terms. If this note is not paid when due or declared due hereunder, the principal thereof shall draw interest at the rate of six percent (6%) per annum. Presentment for payment, notice of dishonor and protest are hereby waived by the maker. If this note is not paid when due or declared due hereunder, or suit is brought, the maker agrees to pay reasonable costs of collection, including not more than One Thousand ($1,000.00) Dollars attorney's fees. The promissory note to Childers had substantially the same wording except for amount and payment dates.↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended. Section 741 is quoted in full as follows: In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value). No issue with respect to section 751↩ has been raised.
4. SEC. 6214. DETERMINATIONS BY TAX COURT. * * * * *
(b) Jurisdiction Over Other Years and Quarters.--The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year or calendar quarter shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.↩
5. Cf. Holbrook v. Commissioner,450 F. 2d 134, 142 (5th Cir. 1971), reversing 54 T.C. 1617↩ (1970). 6. The evidence is very sketchy on this point. Respondent introduced letters between Kissinger and a limited partner not a party to this action which we accepted only for the purpose of showing that letters were sent and not for the truth of the contents. Kissinger, although subpoenaed by respondent, did not appear as a witness. Neosho's final return indicated all the interests were sold. Although Childers apparently did not recover his entire investment, Holbrook apparently did. Evidence was not presented to apprise us as to why Kissinger was willing to pay the amounts he did. ↩
7. Respondent has submitted that the book value and basis in the interests indicate the fair market value. We disagree. In our opinion neither of these factors in this instance have been shown to be indicative of fair market value.↩