H. N. WATSON, Jr., and wife, Shirley
Watson, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE SERVICE,
Respondent-Appellee.

No. 78–1770.

United States Court of Appeals,
Fifth Circuit.

March 14, 1980.

J. R. Blumrosen, Myrtle D. McDonald, Lubbock, Tex., for petitioners-appellants.

M. Carr Ferguson, Asst. Atty. Gen., Richard W. Perkins, Atty., Gilbert E. Andrews, Act. Chief, Tax Div., U. S. Dept. of Justice, Lester Stein, Act. Chief Counsel, IRS, Washington, D. C., for respondent-appellee.

Before GEWIN, RUBIN and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

H. N. (Sonny) and Shirley Watson are taxpayers utilizing the cash receipts and disbursements method of accounting. In November, 1973 they sold a number of bales of cotton pursuant to an arrangement called a deferred payment agreement. In return they received an irrevocable banker's letter of credit in the amount of $42,146.51. The bank's letter of credit guaranteed it would accept and honor this instrument in January, 1974. On January 10, 1974, Sonny Watson went to the bank and exchanged the letter of credit for a check for the face value of the instrument. The issue before the Court is whether the sales proceeds were properly included as taxable income in 1974, or whether the Watsons received taxable income in 1973, the year in which the letter of credit was given by the bank to the Watsons. The Tax Court held that the Watsons received taxable income in 1973 and we affirm.

This case has its seed in the unusually harsh winter of 1972–1973. The weather conditions forced many farmers in the Texas panhandle to postpone selling at least part of their 1972 crop until 1973. As a consequence, when it came time to sell the 1973 crop in late 1973, many farmers were faced with the prospect of having income from two crop years fall in the same tax year.

Security State Bank and Trust Company of Ralls, Texas recognized that many farmers would rather defer receipt of proceeds for their 1973 crop until 1974. The bank president instructed the bank's attorney to develop a deferred payment package. The package created consisted of a deferred payment agreement, a deferred payment authorization, a banker's letter of credit form, and, of course, a disclaimer (disclaiming any representation that the package would have any tax consequences). The packets were distributed to area gins and elevators that were bank customers.[1] One

---

1. The bank did not develop the deferral package merely as a service to its customers. The plan devised by the bank's attorney worked as follows: The gin or elevator that bought a farmer's crop paid the purchase price to the bank. The bank then issued a letter of credit to

of the gins receiving packets was the Cone Gin of Cone, Texas.

On November 1, 1973 Sonny Watson went to Cone Gin to try and sell 147 bales of cotton. Prior to reaching any agreement with the gin, Watson expressly stated that he had no intention of selling cotton unless the gin would enter into an agreement to defer payment for the cotton until the following year. Cone Gin agreed to this condition and they executed a deferred payment agreement. The agreement provided that the gin would not be liable for the purchase price prior to the first day of the calendar year following delivery.

On November 29, 1973 Watson delivered and sold to Cone Gin 147 bales of cotton for $42,146.51. In consideration of the sale Cone Gin issued to Security Bank the following "Deferred Payment Authorization" endorsed by Watson:

> To:  Security State Bank & Trust Co.
> Post Office Drawer AA
> Ralls, Texas 79357

### DEFERRED PAYMENT AUTHORIZATION

$42,146.51    November 30 A.D. 1973 A.D.

This authorization is neither negotiable, assignable, nor transferable, and is issued for the benefit of the below named Producer only.

Upon due presentment and indorsement of this authorization, you are authorized and directed to pay to

  Sonny Watson   ONLY,

the sum of Forty two thousand one hundred forty six and 51/100——Dollars, on, BUT NOT BEFORE, the 10 day of January A.D. 1974

Such sum so authorized represents the debts owing by the undersigned Purchaser to the above named Producer as a result of the delivery of certain farm products by said Producer to the undersigned Purchaser.

EXECUTED this 30 day of November A.D. 1973

On the same day Security Bank issued the following "Irrevocable Banker's Letter of Credit", which was delivered to the Watsons:

### SECURITY STATE BANK & TRUST CO.

Ralls, Texas

Date:  November 30, 1973
To:  Sonny Watson
  Box 296
  Ralls, Texas
  Amount of Credit:  $42,146.51

This is an IRREVOCABLE BANKER'S LETTER OF CREDIT whereby the Security State Bank & Trust Co., Ralls, Texas, acknowledges that

*Cone Gin, Inc.*

has established with said Bank a line of credit sufficient to cover the principal amount to become due under a certain DEFERRED PAYMENT AUTHORIZATION, dated the 30 day of November, 1973, executed by the said

*Cone Gin, Inc.*

authorizing and directing payment to the addressee herein, on, BUT NOT BEFORE, the 10 day of January, 1974, of the sum of Forty two thousand one hundred forty six and 51/100——DOLLARS.

Security State Bank & Trust Co., Ralls, Texas hereby CERTIFIES and GUARANTEES acceptance and honor of the above described DEFERRED PAYMENT

---

the seller, guaranteeing payment upon presentment in January of the following year. This left the bank with the sales proceeds, funds the bank intended to invest in short term government obligations bearing an interest rate of approximately ten percent per annum.

The plan was inordinantly successful. Prior to distributing the deferral packets, the bank's deposits hovered around $200,000.00. At the end of December, 1973, the bank had deferral agreement deposits totaling nearly $4,000,-000.00 invested in the money market. Shortly after the first of the year, deposits fell to approximately $100,000.00.

AUTHORIZATION upon due presentment and indorsement by addressee herein, on, but not before, the stated date.

SECURITY STATE BANK & TRUST CO.

Post Office Drawer AA

Ralls, Texas 79357

THIS LETTER <u>MUST</u> BE SURRENDERED AT THE TIME OF PAYMENT

On January 10, 1974, Sonny Watson went to Security Bank, surrendered his letter of credit and received a check for $42,146.51. The proceeds were reported as income on the Watsons' joint tax return filed for 1974.

In May, 1975, the IRS mailed the Watsons a deficiency notice. The IRS took the position the Watsons received income in 1973 when they received the irrevocable letter of credit. The Watsons petitioned for redetermination of the deficiency two weeks later, and subsequently a hearing was held before the Tax Court. The Court agreed with the IRS. The trial judge held the credit was property with a fair market value. The judge assessed the value of the letter at $42,146.51, and affirmed the IRS determination that the appellants' tax deficiency was $23,319.41. The Watsons then instituted this appeal.

Section 1001(a) of the Internal Revenue Code provides that the gain from the sale of property shall be the excess of the "amount realized" over the adjusted basis of the property.[2] The term "amount realized" is defined by Section 1001(b) to be money received plus "the fair market value of the property (other than money) received." We must decide whether the trial judge correctly determined that the "Irrevocable Banker's Letter of Credit" was "property" with an ascertainable "fair market value".

This Court has previously been called upon to determine whether commercial instruments constitute taxable income in the year of receipt. *Cowden v. Commissioner,* 289 F.2d 20 (5th Cir. 1961); *Dennis v. Commissioner,* 473 F.2d 274 (5th Cir. 1973). The Court has emphasized that "economic realities, not legal abstractions" govern the reach of the tax laws. *Cowden,* 289 F.2d at 24. In *Cowden* it was held that a promissory note was properly includable in taxable income in the year of receipt when the note was: made by a solvent obligor; unconditional; assignable; not subject to set-off; and of a type frequently transferred to lenders or investors at a discount not substantially greater than the generally prevailing premium for the use of money. *Id.* These guidelines are also applicable for determining when a letter of credit is properly included in taxable income. Applying the standards to the case at bar, we conclude the letter of credit was to be included as taxable income in the year of receipt.

■ The Watsons' first contention is that the letter of credit issued by Security Bank was not unconditional. The requirement that a commercial instrument be unconditional stems from the proposition that income is not taxable unless it is within the control of the taxpayer. *See Commissioner v. First Security Bank of Utah, N.A.,* 405 U.S. 394, 403, 92 S.Ct. 1085, 1091, 31 L.Ed.2d 318 (1972) ("[I]n order to be taxed for income, a taxpayer must have complete dominion over it."). For tax purposes, a commercial instrument is "unconditional" when the obligation cannot be avoided or modified without the consent of the obligee. Whether the obligation is fixed depends upon governing local law.

■ The applicable Texas statutory provisions are Tex.Bus. & Com.Code Ann. § 5.106(a)(2) and (b) (Vernon 1968).[3] Sub-

---

**2.** In the case at bar the taxpayers' adjusted basis is zero. A cash method farmer deducts the cost of producing his crops as he incurs those costs.

**3.** Tex.Bus. & Com.Code Ann. § 5.106(a)(2) and (b) provides, in pertinent part:

§ 5.106. *Time and Effect of Establishment of Credit*

(a) Unless otherwise agreed a credit is established

\* \* \* \* \* \*

(2) as regards the beneficiary when he receives a letter of credit or an authorized written advice of its issuance.

(b) Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked

section (a)(2) provides that, unless otherwise agreed, credit is established as regards a beneficiary [4] when the beneficiary receives a letter of credit or written notice that a letter of credit has been issued. Once credit is established as regards a beneficiary, the credit can only be modified or revoked with the consent of the beneficiary. *Id.,* § 5.106(b). The Watsons received the letter of credit in 1973. At that point their rights against the bank for payment were fixed. The trial court correctly concluded that under Texas law the letter of credit was "unconditional".

The Watson's second contention is that the letter of credit was not assignable. The *Cowden* requirement that a commercial instrument be assignable arises from the assumption that income may not be taxed unless it is subject to the taxpayer's control and "he is free to enjoy [it] at his own option . . . , whether he sees fit to enjoy it or not." *Corliss v. Bowers,* 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916 (1930). Whether the letter of credit was assignable depends, once again, upon the governing local law.

▉ The Watsons point to Tex.Bus. & Com.Code Ann. § 5.116(a) [5] and argue that the right to draw under a credit can only be transferred or assigned when the credit so designates. Since the credit in the case at bar does not make the required designation,

the Watsons contend the trial judge erred in holding the letter of credit was assignable.

The Watsons overlook section 5.116(b). [6] Subsection (b) provides that a beneficiary may assign the right to proceeds, even though the credit expressly states that it is nontransferable or nonassignable. When deciding whether a commercial instrument is assignable, we focus on the objective economic realities. *Frank Lyon Co. v. United States,* 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978). Given Section 5.116(b), we are unable to agree with the Watsons' argument that this letter of credit was not assignable.

The Watsons finally argue that the *Cowden* requirements are not satisfied because the letter of credit was not readily marketable. They rely heavily on the testimony of the president of Security Bank in Ralls, Texas, who testified that his bank did not accept letters of credit as collateral for loans. The president, however, in the same response, also testified that letters of credit were accepted as collateral by other lending institutions. They were simply not a "normal device" for doing business in West Texas. The evidence cited by the Watsons does not establish that the trial judge's finding that the letter of credit was readily marketable was clearly erroneous.

only with the consent of the customer.
* * *

**4.** The beneficiary of a credit is defined as the "person who is entitled under its terms to draw or demand payment." Tex.Bus. & Comm.Code Ann. § 5.103(a)(4) (Vernon 1968). The Watsons are beneficiaries in this case.

**5.** Tex.Bus. & Com.Code Ann. § 5.116(a) (Vernon 1968) provides:
(a) The right to draw under a credit can be transferred or assigned only when the credit is expressly designated as transferable or assignable.

**6.** Tex.Bus. & Com.Code Ann. § 5.116(b) provides:
(b) Even though the credit specifically states that it is nontransferable or nonassignable the beneficiary may before performance of the conditions of the credit assign his right to proceeds. Such an assignment is an as-

signment of a contract right under Chapter 9 on Secured Transactions and is governed by that chapter except that
(1) the assignment is ineffective until the letter of credit or advice of credit is delivered to the assignee which delivery constitutes perfection of the security interest under Chapter 9; and
(2) the issuer may honor drafts or demands for payment drawn under the credit until it receives a notification of the assignment signed by the beneficiary which reasonably identifies the credit involved in the assignment and contains a request to pay the assignee; and
(3) after what reasonably appears to be such a notification has been received the issuer may without dishonor refuse to accept or pay even to a person otherwise entitled to honor until the letter of credit or advice of credit is exhibited to the issuer.

The trial judge found that the letter of credit issued to the Watsons met the requirements set forth in *Cowden*. The taxpayers have not.established that the Tax Court erred in its assessment. Thus, we agree with the trial court that the letter of credit should have been treated as taxable income worth $42,146.51 in 1973, the year of receipt.[7]

The Watsons final point of error is based upon lack of familiarity with letters of credit. Appellants point to the trial testimony, which shows that Sonny Watson did not know what a letter of credit was; did not know he would receive a letter of credit from Security Bank; and did not know he could use the letter of credit as collateral for a loan. The record reveals that all the Watsons wanted to do was defer their income from the sale of their 1973 crop until the following year.

While this Court might be sympathetic to the plight of the Watsons, the invitation to apply a subjective standard when assessing tax liability must be rejected. Economic realities, not tax motives, must govern in determining whether income is properly taxable in a given year. *Cf. Cowden v. Commissioner*, 289 F.2d 20 (5th Cir. 1961) (A desire to avoid taxes is irrelevant in determining the tax liability for the receipt of a promissory note).

The Tax Court concluded that when the Watsons received the letter of credit in 1973, they received taxable income worth $42,146.51. Having carefully considered all the appellants' arguments, we find no error in the trial judge's determination. The judgment entered by the trial court is

AFFIRMED.

---

7. The appellants did not contest the trial judge's finding that the value of the letter of credit in 1973 was equal to its face amount. Our review of the record does not establish that this determination was clearly erroneous.

The Commissioner, in assessing the deficiency, determined that the value of the letter of credit in 1973 was $42,146.51. The burden in the Tax Court is on the taxpayer to show that the Commission's deficiency determination is erroneous. *Estate of Broadhead v. Commis-*

*sioner*, 391 F.2d 841 (5th Cir. 1968). The Watsons introduced no evidence at trial to show that the valuation of the letter of credit was inaccurate. They failed to carry their burden of proof before the Tax Court. *See Byram v. Commissioner*, 555 F.2d 1234 (5th Cir. 1977). Thus, the Tax Court's finding that the fair market value of the letter of credit in 1973 was equal to its face amount will not be disturbed.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.