T.C. Memo. 1998-10


UNITED STATES TAX COURT


LARRY A. AND KATHLEEN T. MONICO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23496-95.          Filed January 12, 1998.


    Ps claim certain payments received in 1990, 1991,
and 1992 are a return of capital.  <u>Held</u>:  Ps have
failed to so prove.


<u>Rodger G. Mohagen</u> and <u>Daniel J. Frisk</u>, for petitioners.

<u>Gail K. Gibson</u>, for respondent.


MEMORANDUM OPINION


    HALPERN, <u>Judge</u>:  By notice of deficiency dated September 21,

1995, respondent determined the following deficiencies in

petitioners' Federal income taxes:

| Tax Year | Deficiency |
|----------|------------|
| 1990 | $35,219 |
| 1991 | 60,129 |
| 1992 | 66,435 |

After concessions, the only issue is whether payments received by petitioners in 1990, 1991, and 1992 should have been reported as income in those years.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated by this reference. We need find few facts in addition to those stipulated and, accordingly, will not separately set forth those findings. We include our additional findings of fact in the discussion that follows. Petitioners bear the burden of proof on all questions of fact. Rule 142(a).

## Background

At the time the petition was filed, petitioners resided in Park Rapids, Minnesota. Petitioners filed joint returns for the taxable (calendar) years in question and used the cash method of accounting.

From about November 1, 1980, until sometime in the late 1980's, petitioner Larry A. Monico (Larry Monico) was an equal partner with R.D. Offut Co. (Offut Co.), a Minnesota corporation,

in a Minnesota general partnership, M & O Farms. M & O Farms was in the business of growing potatoes. M & O Farms' annual accounting period was a fiscal year ending on October 31, and it used the cash method of accounting. Ronald Offut owned Offut Co. and was part owner of a business called Chef-Reddy Foods (Chef-Reddy), a food processing business that made frozen french fries.

During its 1983 fiscal year, M & O Farms sold potatoes valued at $1,172,790 to Chef-Reddy. The potatoes were sold on credit, and M & O Farms treated the amount due as an account receivable (the account receivable). M & O Farms never received payment for the potatoes; M & O Farms distributed the account receivable to its partners.

Petitioners reported nothing with respect to the account receivable on either their 1983 or 1984 income tax return. Petitioners have failed to prove that they have ever reported anything with respect to the account receivable.

By agreement executed February 14, 1989 (the purchase agreement), Larry Monico and Offut Co. agreed that Offut Co. would purchase Larry Monico's interest in M & O Farms. Under the heading "Other Matters", the purchase agreement recites:

> It is hereby agreed that Offutt [Chef-Reddy] owes Monico Five Hundred Eighty-six Thousand Dollars ($586,000), which debt is unrelated to the purchase of the Partnership interest described herein. A note will be signed by Offutt in favor of Monico for that sum at closing which will provide for the payment of interest at the rate of ten percent (10%) per annum commencing as of July 1, 1987, with the term of said note to be five (5) years from the date of closing with interest

only being payable on July 1, 1988, and each July 1
thereafter until July 1, 1993, when the entire
principal balance together with accrued interest shall
be due and payable.

Notwithstanding that it was executed on February 14, 1989, the purchase agreement recites that it was made and entered into as of November 1, 1987.

In 1990, 1991, and 1992, petitioners received payments from Chef-Reddy (the Chef-Reddy payments) in the amounts of $283,874, $165,956, and $64,719, respectively, which payments petitioners did not report on their income tax returns for those years.

Respondent determined deficiencies in petitioners' Federal income taxes for 1990, 1991, and 1992 on the grounds, in part, that the Chef-Reddy payments were items of gross income improperly omitted from gross income by petitioners.

Petitioners contend that the Chef-Reddy payments are not items of gross income because they represent a return of capital; i.e., the Chef-Reddy payments represent amounts that, previously, should have been taken into income.

Discussion[1]

---

[1] Rule 151(e) deals with the form and content of briefs, and provides as follows:

(e) Form and Content: All briefs shall contain the following in the order indicated:
(1) On the first page, a table of contents with page references, followed by a list of all citations arranged alphabetically as to cited cases and stating the pages in the brief at which cited. Citations shall be in italics when printed and underscored when typewritten.
(2) A statement of the nature of the controversy,

(continued...)

## I.  Arguments of the Parties

### A.  Petitioners' Receipt of a Note

Petitioners' argument that returns of capital are not gross income is well supported.  Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 (1918).  Unfortunately for petitioners, they have failed

---

[1](...continued)
the tax involved, and the issues to be decided.
    (3)  Proposed findings of fact (in the opening brief or briefs), based on the evidence, in the form of numbered statements, each of which shall be complete and shall consist of a concise statement of essential fact and not a recital of testimony nor a discussion or argument relating to the evidence or the law.  In each such numbered statement, there shall be inserted references to the pages of the transcript or the exhibits or other sources relied upon to support the statement.  In an answering or reply brief, the party shall set forth any objections, together with the reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which the objections are directed; in addition, the party may set forth alternative proposed findings of fact.
    (4)  A concise statement of the points on which the party relies.
    (5)  The argument, which sets forth and discusses the points of law involved and any disputed questions of fact.
    (6)  The signature of counsel or the party submitting the brief.  As to signature, see Rule 23(a)(3).

Petitioners have failed to follow the requirements of Rule 151(e) by failing in their opening brief to individually set forth and number each statement of a proposed finding of fact and by failing, in many instances, to insert references to appropriate sources for the statements they make.  In their reply brief, petitioners have failed to set forth any objections to the proposed findings of fact set forth in respondent's opening brief.  The record in this case is not large and we have reviewed it completely; nevertheless, by their failure to follow our Rules, petitioners have assumed the risk that we have not considered the record in a light of their own illumination.

to prove that the Chef-Reddy payments constitute a return of capital. See Rule 142(a) (burden of proof is on petitioners). The parties have locked horns on whether, sometime prior to receipt of the Chef-Reddy payments, Larry Monico received a payment in liquidation of his interest in the account receivable. Petitioners describe the nature of the controversy as follows:

> Petitioners exchanged a short term account receivable for a long term promissory note in a preceding year. Petitioners assert the receipt of the promissory note was a cash equivalent right, requiring the Petitioners to recognize taxable gain in the year of exchange [which they failed to recognize]. Petitioners claim basis in the promissory note equal to the gain that should have been recognized in the year of the exchange.

Respondent describes the principal question presented as: "Whether the account receivable * * * distributed to petitioner Larry Monico by M & O Farms was converted to a note receivable at a specific point in time between 1983 and 1989."

There is some confusion in petitioners' argument as to when income should have been recognized by them with respect to the account receivable. Petitioners conclude their opening brief with the following argument: "When the Petitioners exchanged their rights to collect the account receivable for a long term promissory note [pursuant to the Other Matters section of the purchase agreement], they should have recognized income in that year (1987)." In their reply brief, petitioners propose a finding of fact that Larry Monico accepted a promissory note from Chef-Reddy in 1983 "rather than collecting full payment on the

account receivable."  Also in that brief, they propose an "ultimate" finding of fact:  "Petitioners should have recognized gain in the year of exchange.  Evidence concludes the exchange was definite by 1989."

We need not resolve the confusion in petitioners' briefs because, whenever it is that petitioners allege Larry Monico received a note (or notes), they have failed to prove that Larry Monico received <u>any</u> note, and we so find.  Petitioners produced no note, and Alan Knoll, the chief financial officer of Offut Co. and an employee of Offut Co. since 1974, could recall no note. Petitioners failed to produce Ronald Offut, who would have knowledge of any note, and we infer from that unexplained failure that his testimony would have been adverse to petitioners.  <u>McKay v. Commissioner</u>, 886 F.2d 1237, 1238 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

B.  <u>Cash Method of Accounting</u>

Despite petitioners' failure to prove that Larry Monico received any note, we must still address petitioners' argument based on the cash equivalence doctrine.  See <u>Cowden v. Commissioner</u>, 289 F.2d 20, 24 (5th Cir. 1961) ("negotiability is not the test of taxability in an equivalent of cash case"), revg. and remanding 32 T.C. 853 (1959).  Section 1.446-1(a)(3), Income Tax Regs., makes clear:  "Items of gross income * * * which are elements in the computation of taxable income need not be in the

form of cash.  It is sufficient that such items can be valued in terms of money."  Nevertheless, generally, a cash-method taxpayer only takes into account an item of gross income when actually or constructively received.  Sec. 1.446-1(c)(1)(i), Income Tax Regs. A promise to pay is includable in gross income when received by a cash-method taxpayer if it is the equivalent of cash.  Cowden v. Commissioner, supra at 24.  Not all promises received by a cash-method taxpayer, however, are the equivalent of cash.  E.g., Richardson v. Commissioner, 76 T.C. 512, 531-532 (1981) (notes received for noncompetition fees), affd. 693 F.2d 1189 (5th Cir. 1982).  The characteristics of a promise to pay that is the equivalent of cash were described by the Court of Appeals for the Fifth Circuit in Cowden:

> We are convinced that if a promise to pay of a solvent obligor is unconditional and assignable, not subject to set-offs, and is of a kind that is frequently transferred to lenders or investors at a discount not substantially greater than the generally prevailing premium for the use of money, such promise is the equivalent of cash and taxable in like manner as cash would have been taxable had it been received by the taxpayer rather than the obligation.  * * *  [Cowden v. Commissioner, supra at 24.]

Accord Estate of Silverman v. Commissioner, 98 T.C. 54, 61 (1992).

Petitioners have failed to prove that the obligation of either Chef-Reddy or Offut Co. to make the Chef-Reddy payments is a cash equivalent.  Among other failures, petitioners have failed to prove that either Chef-Reddy's or Offut Co.'s obligation to

make the Chef-Reddy payments is the kind of promise to pay that is frequently transferred to lenders or investors at a discount not substantially greater than the generally prevailing premium for the use of money.  We therefore find that the obligation to make the Chef-Reddy payments is not the equivalent of cash.

C. Cottage Sav. Association v. Commissioner

Petitioners attempt to buttress their argument by citing Cottage Sav. Association v. Commissioner, 499 U.S. 554 (1991) (exchange of property gives rise to a realization event under section 1001 so long as the exchanged properties are "materially different"; i.e., so long as they embody a legally distinct entitlement).  Petitioners argue that, when Larry Monico "exchanged the account receivable for the promissory note, the Petitioners realized and should have recognized income." Petitioners have failed to prove that there was any such exchange.  Moreover, they have failed to prove any material change in the obligation.  Cottage Savings Association is inapplicable.

II.  Conclusion

Petitioners have failed to prove that the Chef-Reddy payments constitute a return of capital.  That being the exclusive basis on which they assigned error to respondent's determination of a deficiency with respect to the Chef-Reddy

payments, respondent's determination of a deficiency in tax with respect thereto is sustained.

<u>Decision will be entered under Rule 155</u>.