THE PITTSBURGH MILK COMPANY, DISSOLVED, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40271–40275, 48223–48228. Filed June 27, 1956.

---

[1] The following cases are here consolidated: The Pittsburgh Milk Company, Now Dissolved, by David A. Vinocur, Morris Vinocur, and Louis M. Vinocur, and Morris Vinocur and David A. Vinocur, Trustees under an Indenture of Trust dated January 10, 1946, Between Estyre V. Tucker, Donor, and David A. Vinocur and Morris Vinocur, Trustees, for the Benefit of Judy Tucker and Shirley Tucker, being all the Former Officers, Directors, and/or Shareholders of The Pittsburgh Milk Company, Now Dissolved, Docket Nos. 40271 and 48226; Trust Under Agreement Dated January 10, 1946, Between Estyre Vinocur Tucker, Transferee, for the Benefit of Judy Tucker and Shirley Tucker, and Morris Vinocur and David A. Vinocur, Trustees, Docket Nos. 40272 and 48227; David A. Vinocur, Transferee, Docket Nos. 40273 and 48223; Morris Vinocur, Transferee, Docket Nos. 40274 and 48225; Louis M. Vinocur, Transferee, Docket Nos. 40275 and 48224; David A. Vinocur and Morris Vinocur, Trustees for the Benefit of Judy Tucker and Shirley Tucker, Transferees, Docket No. 48228.

708

*Robert G. MacAlister, Esq.*, and *Joseph B. Cohen, C. P. A.*, for the petitioners.

*George J. Rabil, Esq.*, for the respondent.

714

**OPINION.**

Pierce, *Judge:* The question here is what effect, if any, should be given for income tax purposes to the allowances (sometimes called discounts or rebates) which the petitioner corporation made to certain purchasers of its milk in willful violation of the Milk Control Law of Pennsylvania.

The petitioners' position is that such allowances should be given effect in either of two ways (each of which would yield substantially the same tax result) : (1) That such allowances should be applied to *reduce the corporation's gross sales*, on the theory that the milk actually was sold for agreed net prices, represented by the difference between the list prices fixed by the Milk Control Commission and the amounts of allowances computed at agreed specific rates; or (2) in the alternative, that such allowances should be recognized as *deductions from gross income*, for ordinary and necessary business expenses in the nature of advertising or sales promotion expense.[4]

---

[4] The petitioners alleged, in their pleadings, that the allowances should be given effect as deductions for "Advertising." But, in their briefs, they contended that the allowances should be applied, either as reductions from gross sales or as deductions from gross income; and the respondent made reply to both these contentions. Subsequently, following a conference with the Court, the parties filed a supplemental stipulation of facts and also supplemental briefs, both of which were directed particularly to the question of whether the allowances should be applied to reduce gross sales. The issue is primarily one of income tax accounting for a single disputed item; and we regard both contentions to be properly before us.

The respondent's position, on the other hand, is that both of such contentions should be rejected. He contends that the milk was sold for the list prices fixed by the Milk Control Commission, because these list prices were used in entering the sales on the corporation's books; that the allowances cannot be given effect unless they qualify as deductions from gross income; and that they should not be recognized as deductions in the circumstances here present, because this would frustrate the sharply defined policy of the Commonwealth of Pennsylvania.

In considering petitioners' first contention that the allowances should be applied to reduce the corporation's gross sales, it is necessary to keep in mind certain basic principles. We are here dealing with the taxation of income. Under both the Sixteenth Amendment and the Internal Revenue Code, the tax is imposed only on "income," and not upon every conceivable type of receipt. Where gains, profits, and income derived from the sale of property are involved, the tax is computed with respect to "the amount realized therefrom" (sec. 111 (a), 1939 Code) ; and such realized amount must be based on the actual price or consideration for which the property was sold, and not on some greater price for which it possibly should have been, but was not, sold. Gains are taxed, irrespective of whether the transaction was legal or illegal (*United States* v. *Sullivan,* 274 U. S. 259) ; but no more than the actual gross income can be subjected to income tax, in any event. (*Lela Sullenger,* 11 T. C. 1076.) And finally, after the true nature of a transaction has been revealed, if it is found that the book entries do not accurately reflect the income realized, then the tax must be computed with respect to the income, rather than with respect to such entries. The actual facts, not bookkeeping entries, control the determination of taxable income. *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179, 187; *Northwestern States Portland Cement Co.* v. *Huston,* (C. A. 8) 126 F. 2d 196.

We are convinced in the instant case, and have found as a fact, that the milk here involved was not sold at the list prices fixed by the Milk Control Commission, but rather for net prices which resulted from reducing these list prices by certain allowances computed at specific rates fixed by prior agreements with the customers. The parties have stipulated: That the allowances were given "pursuant to informal agreements with such customers made for the purpose of avoiding the provisions of the Pennsylvania Milk Control Law"; that the specific percentage rates of these allowances were determined pursuant to the informal agreements; and that such specific percentage rates were applied "so as to result in net cost to the customer below that represented by Milk Control Commission list prices." Thus it will be seen that the Commission list prices were used merely as the starting point in agreed formulas for arriving at the agreed net

prices for the milk; and that the so-called allowances represented merely the difference between the said list prices and the agreed selling prices.

The situation presented is not unlike that where goods are sold at a catalog list price, less a trade discount of specified percentage. This Court has recognized that trade discounts should be applied to reduce gross sales. *American Lace Mfg. Co.*, 8 B. T. A. 419; *American Cigar Co.*, 21 B. T. A. 464; *Albert C. Becken, Jr.*, 5 T. C. 498, 505. Also, Treasury Form 1120 (United States corporation income tax return) makes specific provisions, in line 1 thereof, for the reduction of "gross sales" by "returns and allowances"; and it further indicates that such adjustment should be made before subtracting "cost of goods sold" to arrive at "gross profit."

Such treatment of the sales transactions is not affected by the fact that the sales were made at less than the minimum prices fixed by the Milk Control Commission. If the corporation had, entirely apart from the allowances and book entries which it employed, actually sold a given quantity of milk for $9 cash, in willful disregard of a minimum price of $10 fixed by the Milk Control Commission, there can be no doubt that any gain or profit resulting from such sale would have to be computed, for income tax purposes, with respect to the actual $9 selling price, and not with respect to some greater price for which the milk might have been, but was not, sold. It is possible that the sale for the lesser price might have enabled the Milk Control Commission to suspend or revoke the corporation's license as a milk dealer, or to seek injunction against further violations, or to invoke criminal penalties for the violations. But, so far as the Federal income tax is concerned, such tax could be imposed only in respect of the $9 price for which the milk was sold.

It is our opinion that such income tax result is the same where the parties, after having agreed between themselves that the milk would be sold and purchased for the price of $9, deliberately masked and concealed the true character of the transaction from the Milk Control Commission, by having the purchaser first deliver its check for $10 to the seller, and then having the seller issue a counter-check for $1 to the purchaser, in order to arrive at the agreed selling price. In this situation, the seller did not receive the extra $1 beneficially or under any claim of right, but merely as a deposit which was to be returned in all events. We voice no approval of the business ethics of such concealment; but, as the Supreme Court said in *Commissioner* v. *Wilcox*, 327 U. S. 404, "Moral turpitude is not a touchstone of taxability."

It does not follow, of course, that all allowances, discounts, and rebates made by a seller of property constitute adjustments to the

selling prices. Terminology, alone, is not controlling; and each type of transaction must be analyzed with respect to its own facts and surrounding circumstances. Such examination may reveal that a particular allowance has been given for a separate consideration—as in the case of rebates made in consideration of additional purchases of specified quantity over a specified subsequent period; or as in the case of allowances made in consideration of prepayment of an account receivable, so as to be in effect a payment of interest. The test to be applied, as in the interpretation of most business transactions, is: What did the parties really intend, and for what purpose or consideration was the allowance actually made? Where, as here, the intention and purpose of the allowance was to provide a formula for adjusting a specified gross price to an agreed net price, and where the making of such adjustment was not contingent upon any subsequent performance or consideration from the purchaser, then, regardless of the time or manner of the adjustment, the net selling price agreed upon must be given recognition for income tax purposes.

We hold that the allowances here involved should be applied to reduce the corporation's gross sales, so as to reflect the actual agreed prices for which the milk was sold. By reason of such holding, it is unnecessary to consider the petitioners' alternative contention that the allowances would qualify as deductions from gross income.

*Decision of no liability will be entered in Docket Nos. 40272 and 48227, pursuant to stipulations filed by the parties.*

*Decisions will be entered under Rule 50 in the remaining docket numbers.*