**In re Frank ROBERSON, Sr. and Jimmie Roberson, Debtors.**

**Frank ROBERSON, Sr. and Jimmie Roberson, Movants,**

v.

**INTERNAL REVENUE SERVICE, Respondent.**

**Bankruptcy No. 92–10655.**

United States Bankruptcy Court, M.D. Tennessee.

March 11, 1994.

Michael Martineau, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

Mark H. Westlake, Westlake & Marsden, P.C., Nashville, TN, for debtors/movants.

**MEMORANDUM DENYING THE DEBTORS' MOTION TO DETERMINE TAX LIABILITY AND OBJECTION TO CLAIM OF THE INTERNAL REVENUE SERVICE**

George C. Paine, II, Chief Judge.

## I. INTRODUCTION:

This matter comes before the court on the debtors' Motion to Determine Tax Liability and Objection to Claim of the Internal Revenue Service. In their objection, the debtors sought an order disallowing the proof of claim filed by the IRS for tax years 1982, 1983, and 1984. As grounds, the debtors argued first that the statute of limitations for assessment of income tax liability had expired pursuant to 26 U.S.C. § 6501(a) of the Internal Revenue Code. On this issue, the court finds against the debtors and applies the fraud exception of I.R.C. § 6501(c)(1) allowing the IRS to assess a tax deficiency "at any time."

Alternatively, the debtors sought a redetermination of their joint federal income tax liability for years 1982, 1983, and 1984. The debtors claimed certain deductions on their tax returns for these years that were disallowed by the IRS. Regarding this issue, the court also finds against the debtors and concludes that the claimed deductions are included as gross income and not deductible as

ordinary and necessary trade or business expenses.

Although the debtors styled this matter as a motion, it is more properly a contested matter in the nature of an objection to the allowance of a proof of claim filed by the IRS. On November 17, 1993, the court heard testimony in the trial of this matter. The following constitute findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

## II. DISCUSSION:

### A. The Statute of Limitations Issue:

The court first addresses the issue of whether the tax assessments of the IRS are barred by the statute of limitations under I.R.C. § 6501(a). I.R.C. § 6501(a) sets forth the general statute of limitations in a tax deficiency case. It provides that "any tax imposed by this title shall be assessed within 3 years after the return was filed." I.R.C. § 6501(a).

According to the Stipulation of Facts, the debtors' tax returns were filed as follows:

(1) The 1982 return was filed on January 30, 1985,

(2) The 1983 return was filed on April 24, 1985,

(3) The 1984 return was filed on January 22, 1986.

On October 9, 1991, the IRS issued a statutory Notice of Deficiency to the debtors, asserting a deficiency for 1982, 1983, and 1984 and proposing additional assessments of income tax, penalties, and interest for each of these years.

Being outside the three year statutory period, the assessments for 1982, 1983, and 1984 are barred by I.R.C. § 6501(a). There are, however, several exceptions to this three year limitations period. One such exception, found in I.R.C. § 6501(c)(1), is the fraud exception. The IRS can assert a deficiency "at any time" if the taxpayer filed "a false or fraudulent return with the intent to evade tax." I.R.C. § 6501(c)(1).

■ The court agrees with the debtors that, in order to apply the fraud exception, the IRS has the burden of establishing by clear and convincing evidence that the debt-

ors "intentionally designed to evade a tax believed to be owing." *Moore v. Commissioner,* 619 F.2d 619, 619 (6th Cir.1980). This burden of proof may be shown by circumstantial evidence. *Id.*

At trial, the IRS relied primarily on the Stipulation of Facts as circumstantial evidence of Roberson, Sr.'s fraudulent intent to evade tax. The debtors, on the other hand, argued that Roberson, Sr.'s involvement in the life insurance premium rebating scheme was "an attempt to maximize income and not an attempt to evade taxes." Reply Brief of Debtor at 2. According to the debtors, the inferences drawn from the Stipulation of Facts were not sufficient to prove fraud with intent to evade taxes by clear and convincing evidence.

■ The court, however, finds the debtors' argument unconvincing. Based on the evidence presented at trial, including the Stipulation of Facts, the court concludes that the IRS has met its burden of proof. While Roberson, Sr. clearly was engaged in a scheme to maximize income, the court found convincing evidence that he also intended to evade taxes on part of this income.

The debtor, Frank Roberson, Sr. and his son, Frank Roberson, Jr., engaged in a life insurance premium rebate scheme in which life insurance policies were sold to various charitable and non-charitable insureds. On these sales, Roberson, Jr. was the listed selling agent, and Roberson, Sr. was the district manager. The life insurance company for which the policies were sold paid commissions on the sales in the names of both Roberson, Sr. and his son. The insurance companies paying commissions issued forms W-2 or 1099, reporting commission income paid to Roberson, Sr. and to his son for the years at issue.

Commission checks paid both in Roberson Sr.'s name and in his son's name were deposited into Roberson, Sr.'s insurance brokerage business account. Roberson, Sr. used these funds to operate his insurance brokerage business. He wrote checks out of his business account to pay various business expenses, such as contract labor payments to

his secretary and son and interest payments to pay an $18,000 loan.

Roberson, Sr. properly reported commission income showing up in his name on forms W–2 or 1099. However, significant commissions paid in his son's name and deposited into Roberson Sr.'s business account were not properly reported on anyone's tax returns. When the IRS approached Roberson Sr.'s son for failing to report this commission income, showing up in the son's name on forms W–2 or 1099, Roberson, Sr. accepted full responsibility and criminal liability for the failure to report this income.

Based on this evidence, the court concludes that the unreported commission income at issue was gross income to Roberson, Sr. I.R.C. § 61(a)(1) broadly defines gross income as "all income from whatever source derived, including ... commissions." Roberson, Sr. realized all the benefits from this unreported commission income by using it to operate his insurance brokerage business. When the IRS questioned him as to whose income this was, he accepted full responsibility for failing to report it. He thereafter plead guilty to filing a false tax return for 1982. Clearly, this unreported commission income was gross income to Roberson, Sr., which he failed to report on his income tax returns.

Being a sophisticated business person who was running a sophisticated premium rebate scheme, the court is unconvinced by Roberson Sr.'s testimony that he thought he had reported all his taxable gross income for the years at issue. He was aware of the presence of this unreported income in his business account. He deposited this income into his business account himself. His failure to report this income was more than a mere oversight. The court finds sufficient circumstantial evidence to establish that Roberson, Sr. "intentionally designed to evade a tax believed to be owing." *See Moore,* 619 F.2d at 619.

Accordingly, the fraud exception to the statute of limitations on assessments applies, and the IRS is not barred from assessing the debtors for the deficiencies at issue. Having upheld application of the fraud exception, the court need not reach the issue of the collateral estoppel effect of Roberson Sr.'s guilty plea to filing a false tax return for 1982.

B. The Exclusion and Deductibility Issues:

The second issue before the court involves whether the debtors should be taxed on amounts Roberson, Sr. applied to purchase life insurance policies for his clients. Roberson, Sr. offered to sell life insurance policies to insureds at a discount from normal premium rates. Roberson discounted these policies by paying all or part of the first year premiums with his own funds, ultimately out of commission income paid to him or his son.

The debtors argued that the rebated life insurance premiums should be excluded from gross income as cost of goods sold under I.R.C. § 61(a)(1). In the alternative, the debtors contended that the rebated premiums were deductible as ordinary and necessary trade or business expenses under I.R.C. § 162(a).

On the issue of whether rebated life insurance premiums are to be excluded from gross income as cost of goods sold, the court applies the holding of *Alex v. Commissioner,* 628 F.2d 1222 (9th Cir.1980), as argued by the IRS. In *Alex,* Judge Choy affirmed a decision from the United States Tax Court that a life insurance agent was not entitled to exclude from gross income as cost of goods sold rebated premiums paid to insured clients. *Id.* at 1224–25.

In arguing for the exclusion of the rebated premiums from gross income, the debtors relied primarily on Judge Choy's contemporaneous Ninth Circuit decision in *Max Sobel Wholesale Liquors v. Commissioner,* 630 F.2d 670 (9th Cir.1980). In *Max Sobel,* Judge Choy held that, under the doctrine of *Pittsburgh Milk Co. v. Commissioner,* 26 T.C. 707, 1956 WL 699 (1956), a seller's payment of cash or extra merchandise to a customer as an added consideration for a sale is a price adjustment and is excluded from gross income under I.R.C. § 61(a)(1). *Id.* at 671–72.

In the *Alex* case, however, when faced with a life insurance agent rebating premiums to the insured, Judge Choy rejected the price adjustment theory that he applied in *Max Sobel. Alex,* 628 F.2d at 1224–25. Judge

Choy stated that the price adjustment theory "applies only in the two-cornered situation where a seller effects a price adjustment by making a payment to a customer." *Id.* at 1224. As the court pointed out, this situation is three-cornered because the price adjustment was made by the insurance agent and not by the actual seller of the insurance policy, i.e. the insurance company. *Id.* Since "no price was adjusted by any seller," the agent's rebate of premiums did not qualify as exclusions from gross income under the *Max Sobel* or *Pittsburgh Milk* standard. *Id.* at 1225.

■ As stated in the Stipulation of Facts, Roberson, Sr. rebated premiums out of his own commission income or that of his son. Thus, as in *Alex*, "the situation is three-cornered, and no price was adjusted by any seller." *Id.* at 1224. Since Roberson Sr.'s rebate of premiums to insureds were not the acts of a seller adjusting price, such rebates do not qualify as an exclusion from gross income. *See id.*

As further support for their position, the debtors cited the Tenth Circuit's decision in *Worden v. Commissioner*, 2 F.3d 359 (10th Cir.1993). In this case, the agent discounted life insurance policies by contracting away his right to receive commissions. *Id.* at 362. When the insured purchased a policy, the insured would only pay the net first year premium, i.e. the gross first year premium less the commission to the agent. *Id.* at 360.

Consequently, the agent reported no commission income from these transactions. *Id.* When the IRS asserted a deficiency, the *Worden* court held that the commission was excluded from gross income because the agent had contracted away his right to receive the income. *Id.* at 362.

Like *Max Sobel*, however, this case is also distinguishable from the *Alex* case. In *Alex*, unlike *Worden*, the agent never contracted away his right to receive a commission. Instead, the agent actually received commission income from the insurance company and, in a separate transaction, rebated it to the insured. As such, the court finds the holding in *Alex* applicable to the facts in this case and concludes that rebated commissions cannot be excluded from gross income under I.R.C. § 61(a)(1).

Regarding the issue of whether rebated commissions are deductible from gross income as ordinary and necessary trade or business expenses under I.R.C. § 162(a), the court agrees with the IRS's application of I.R.C. § 162(c)(2). § 162(c)(2) provides that no deductions under § 162(a) shall be allowed for any payment that is illegal under state law, provided that such state law is "generally enforced" and "subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business."

■ Tennessee has a state anti-rebate law pertaining to insurance policies at Tenn.Code Ann. § 56–8–104(7)(A) (1989 & Supp.1993). Under this law, the rebating of insurance premiums to clients as an inducement to purchase a life insurance contract is an unfair trade practice. *Id.* The Commissioner of Insurance has the power to examine and investigate possible violations of this law. Tenn.Code Ann. § 56–8–107 (1989). Upon finding a violation, the Commissioner may issue a cease and desist order. Tenn.Code Ann. § 56–8–109 (1989). An agent's further violation of the cease and desist order may, at the Commissioner's discretion, lead to civil fines, suspension or revocation of the agent's license, or other appropriate relief. Tenn. Code Ann. § 56–8–112 (1989).

■ In order for § 162(c)(2) to apply, this Tennessee law must be "generally enforced." The term "generally enforced" as used in § 162(c)(2) is defined in Treas.Reg. § 1.162–18(b)(3) as follows,

[A] state law shall be considered to be generally enforced unless it is never enforced or the only persons normally charged with violations thereof in the State . . . enacting the law are infamous or those whose violations are extraordinarily flagrant. For example, a criminal statute of a state shall be considered to be generally enforced unless violations of the statute which are brought to the attention of appropriate enforcement authorities do not result in any enforcement action in the absence of unusual circumstances.

See *Custis v. Commissioner,* 43 T.C.M. (CCH) 1511, 1982 WL 10594 (1982). The IRS has the burden of establishing by clear and convincing evidence whether the state law at issue is "generally enforced." I.R.C. § 162(c)(2); *Custis* 43 T.C.M. at 1511.

▉ At trial, Jennifer Loyd, Assistant Chief Counsel for the Insurance Division of the Tennessee Department of Commerce and Insurance, testified as to whether the Tennessee anti-rebate statute is "generally enforced." She stated that while enforcement of this law is not a top priority of the department, investigation and prosecution for violations are fairly common. She estimated approximately ten investigations and prosecutions over a five-year period. She also testified that an agent's license was revoked in 1992 for violation of the state's anti-rebate statute.

On the basis of this testimony, the court concludes that clear and convincing evidence exists that the Tennessee anti-rebate law is "generally enforced" pursuant to I.R.C. § 162(c)(2). As Treas.Reg. § 1.162–18(b)(3) quoted above provides, the debtor will prevail on this issue only if Tennessee's anti-rebate statute is never enforced when brought to the attention of state officials. Ms. Lloyd's testimony clearly demonstrated that this is not the case. *See also Custis,* 43 T.C.M. at 1511 (held Ohio's anti-rebate statute is not "generally enforced" when no formal prosecutions or license revocations were present during the period in question); *Boucher v. Commissioner,* 77 T.C. 214, 218, 1981 WL 11275 (1981) (held Washington's anti-rebate statute is "generally enforced" even though no aggressive policy of detecting violations existed). Accordingly, the court finds that Roberson, Sr.'s rebated premiums are not deductible as ordinary and necessary trade or business expenses under § 162(a) because they were paid in violation of a "generally enforced" state law pursuant to § 162(c)(2).

▉ At trial and in their trial brief, the debtors argued that Tennessee's anti-rebate law was unconstitutional. The debtors pointed out that the Florida Supreme Court held a Florida law similar to Tennessee's anti-rebate law unconstitutional. This court, however, is reluctant to question the constitutionality of a state law passed by the state legislature and generally enforced by a state agency. This is an issue better addressed by the state supreme court or the state legislature.

### III. CONCLUSION:

For the foregoing reasons, the court denies the debtors' Motion to Determine Tax Liability and Objection to Claim of IRS. The IRS may assess the debtor for deficiencies in unreported commission income for tax years 1982, 1983, and 1984. Furthermore, the IRS may disallow the debtors attempt to exclude the rebated premiums from gross income for these years or to deduct them from gross income as ordinary and necessary trade or business expenses.

IT IS SO ORDERED.