T.C. Memo. 2021-23

UNITED STATES TAX COURT

KONSTANTIN ANIKEEV AND NADEZHDA ANIKEEV, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13080-17.                    Filed February 23, 2021.

Jeffrey M. Sklarz and Noelle T. Geiger, for petitioners.

John Richard Mikalchus and Erika B. Cormier, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  This is a deficiency case in which respondent determined that petitioners are liable for deficiencies totaling $9,928 for 2013 and $93,845 for 2014.[1]  These amounts reflect increased amounts set forth in respondent's first

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** amendment to answer. Respondent asserts that petitioners must recognize

additional income totaling $35,665 for 2013 and $276,381 for 2014 on the basis of

rewards that petitioners acquired from American Express equal to 5% of their

purchases of prepaid Visa gift cards, debit cards, and money orders and that were

paid to them in the form of statement credits against their American Express bills.

Respondent argues that the rewards are income rather than rebates because

petitioners acquired the rewards from the purchase of Visa gift cards, debit cards,

and money orders which respondent argues are cash equivalents and not goods or

services that may be subject to rebates.

Respondent has conceded that $535 and $894 of the rewards accumulated in

2013 and 2014, respectively, were for the purchase of products other than Visa gift

cards, debit cards, and money orders and thus are not subject to tax. In the notice

of deficiency respondent also determined that petitioners earned additional interest

income totaling $562 for 2014. Respondent has conceded this issue. He also

determined that petitioners received a State tax refund of $793 for 2014.

Petitioners have conceded this issue. Respondent's determinations result in

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

**[\*3]** computational adjustments to petitioners' itemized deductions and exemptions for 2014 as a result of the increase to their taxable income.

FINDINGS OF FACT

When their petition was timely filed, petitioners' legal residence was in Connecticut.

In 1995 Mr. Anikeev earned a bachelor of science degree in physics from the Moscow Institute of Physics & Technology (MIPT), graduating summa cum laude. In 1997 he earned a master of science in physics degree from MIPT, graduating with honors. In 2004 he earned a doctorate in physics from the Massachusetts Institute of Technology. During the 2013 and 2014 tax years he worked for IBM as a consultant. The record consists of admissions, stipulated facts and exhibits, and Mr. Anikeev's testimony.

I.    American Express Blue Cash Rewards Program

During 2013 and 2014 American Express offered a rewards program known as Blue Cash from American Express Card (Blue Cash Rewards Program or Rewards Program). The Blue Cash Rewards Program paid Blue Cash Reward Dollars (Reward Dollars) to credit card users who made eligible purchases on their American Express cards. The number of Reward Dollars that a card user could be awarded pursuant to the Blue Cash Rewards Program was based on a percentage

[*4] of the dollar amount of the card user's eligible purchases. Eligible purchases were purchases made on the card for goods and services minus returns and other credits.

Pursuant to the terms of the Blue Cash Rewards Program, eligible purchases did not include: (1) fees or interest charges, (2) balance transfers, (3) cash advances, (4) purchases of traveler's checks, (5) purchases or reloading of prepaid cards, or (6) purchases of any cash equivalents. For purposes of the Blue Cash Rewards Program, a Reward Year comprised 12 billing periods in a row beginning with the first anniversary of the opening of the account.

For the first $6,500 of purchases in each Reward Year petitioners received Reward Dollars equal to 1% of everyday purchases and 0.5% of all other eligible purchases. For purchases in excess of $6,500 petitioners received Reward Dollars equal to 5% of everyday purchases and 1% of all other eligible purchases. The Blue Cash Rewards Program defined everyday purchases as eligible purchases made in the United States at: (1) supermarkets (superstores and warehouse clubs are not considered supermarkets), (2) gas stations for purchases of $400 or less of gasoline (superstores, supermarkets, and warehouse clubs that sell gasoline are not considered gas stations), and (3) select major drugstores.

**[\*5]** Reward Dollars earned during a billing period became available for redemption after the subsequent billing period if the card was in good standing. American Express treated all of petitioners' purchases in 2013 and 2014 as qualifying for Reward Dollars. The first page of each billing statement included a statement of Reward Dollars earned during the billing period, and the last page included a Reward Dollars summary that described Reward Dollars earned and redeemed during the billing period. Card users could redeem Reward Dollars for Amazon gift cards or as credits on their American Express card balances (statement credits). There was no limit on the amount of Reward Dollars a card user could earn in a Reward Year.

## II.   Prepaid Gift and Debit Cards

Prepaid Visa gift cards can be used for purchases in the United States anywhere that Visa debit cards are accepted, including online. Product numbers assigned by the stores where the cards are sold are affixed and associated with the cards.

A reloadable debit card is a debit card to which funds can be added without having a bank account. The holder of a reloadable debit card can purchase reload amounts (reloads), increasing the amount that is available on the reloadable debit

**[*6]** card.  Reloadable debit cards can be used for purchases in the same way as any other debit card.

III.     Petitioners' Participation in the Blue Cash Rewards Program

A.     American Express Cards Owned by Petitioners

Mr. Anikeev had a Blue Cash American Express credit card ending in 1005 (1005 Card) during 2013 and 2014 with a $35,000 credit limit.  Mrs. Anikeev was an authorized user of the card.  Mr. Anikeev was in good standing with American Express throughout 2013 and 2014.  In November 2014 American Express closed the 1005 Card.  When the 1005 Card was closed, Mr. Anikeev redeemed Reward Dollars totaling $3,525 as a statement credit that American Express paid to him by check as a credit balance refund on November 21, 2014.

Mrs. Anikeev had a Blue Cash American Express credit card ending in 1001 (1001 Card) during 2014 with a $15,500 credit limit.  Mrs. Anikeev was in good standing with American Express throughout 2014.  In October 2014 American Express closed the 1001 Card.  When the 1001 Card was closed, Mrs. Anikeev redeemed Reward Dollars totaling $3,025 as a statement credit that American Express paid to her by check as part of a credit balance refund of $9,654 on October 31, 2014.

**[*7]** B.    <u>Purchase of Visa Gift Cards</u>

To generate as many Reward Dollars as possible, petitioners used the 1005 Card and the 1001 Card (American Express cards) to buy as many Visa gift cards as they could from local grocery stores and pharmacies. In addition to the values of the gift cards, petitioners were charged service fees for the gift cards of between 0.8% and 1.2% of the gift cards' face values. They used the gift cards to purchase money orders and were charged service fees for the money orders between 0.07% and 0.33% of the dollar amounts of the money orders. They deposited the money orders into their bank accounts. The fees associated with a $500 gift card and a related money order purchase were between $6 and $7.

Upon a payment of their monthly American Express bills, they received the applicable percentage, either 1% or 5%, of the total purchases in Reward Dollars that they could use for a statement credit or redeem for Amazon gift cards. Most of petitioners' total dollars spent with the American Express cards were for purchases of Visa gift cards.

On occasion petitioners paid their American Express bills through MoneyGram, a money transfer company offering its services in participating Walmart stores. When using MoneyGram, petitioners paid the American Express bill as well as the applicable service fee with a reloadable debit card, and

[*8] MoneyGram would transmit the payment to American Express electronically. Petitioners used their American Express cards to purchase the reloadable debit cards that they used to pay their American Express bills, and the purchase of debit cards and reloads also generated Reward Dollars.

C.     Purchase of Money Orders With American Express Cards

On occasion Mr. Anikeev purchased money orders from Rite Aid with one of the American Express cards. The purchase of these money orders generated Reward Dollars.

D.     Total Purchases

All of petitioners' charges of more than $400 in single transactions with the American Express cards during 2013 and 2014 were for Visa gift cards, reloadable debit cards, or money orders. In 2013 petitioners' charges on the 1005 Card totaled $1,219,077. Of this amount, $1,208,376 was for charges of more than $400 in single transactions for Visa gift cards, reloadable debit cards, and money orders. Accordingly, over 99% of the charges on the 1005 Card during 2013 were for Visa gift cards, reloadable debit cards, and money orders. Petitioners made $10,702 in purchases during 2013 that were not for Visa gift cards, reloadable debit cards, or money orders. In 2014 petitioners made charges totaling

[*9] $5,184,033 on their American Express cards for Visa gift cards, reloadable debit cards, and money orders.

### E. Deposits of Money Orders

The purchase of money orders with the Visa gift cards was very important to Mr. Anikeev because it provided a means to deposit the amounts charged on the American Express cards into petitioners' bank accounts. Petitioners typically purchased the money orders with the Visa gift cards, but on some occasions they purchased the money orders directly with their American Express cards. In 2013 and 2014 petitioners deposited a combined $4,028,743 in money orders into their bank accounts.

### F. Payment of American Express Bills

Petitioners had to consider the credit limits on the American Express cards when making purchases. To have credit available for their purchases of Visa gift cards and reloads on their debit cards, petitioners made frequent payments on the balances of their American Express cards. They were not charged and did not pay fees or interest on either American Express card during 2013 or 2014.

### G. Total Reward Dollars Redeemed

Petitioners redeemed $36,200 in Reward Dollars as statement credits in 2013 and $277,275 in 2014. On their joint tax return filed for the 2013 tax year,

**[*10]** they reported as income $149,773 in wages, $2,338 in interest, and $299 in ordinary dividends. They did not report any income from the Rewards Program. On their joint tax return filed for the 2014 tax year, they reported as income $161,480 in wages, $1,566 in interest, $78 in ordinary dividends, and $1,821 in capital gains. They did not report any income from the Rewards Program.

On March 23, 2017, respondent issued a notice of deficiency to petitioners for 2013 and 2014 determining additional "other income" of $29,775 and $265,485, respectively, from the Rewards Program. In the first amendment to answer, respondent increased the amount of the other income from the Rewards Program to $36,200 for 2013 and $277,275 for 2014 which increased the tax deficiencies from $8,264 to $9,928 for 2013 and from $89,847 to $93,845 for 2014.

Respondent has not asserted that petitioners should recognize gain on the exchange of the gift or debit cards into assets that could be deposited into their bank accounts (or the electronic transfer of money) attributable to the 5% rebates. Rather, respondent's consistent position is that Reward Dollars generated ordinary income to petitioners when issued by American Express.

**[\*11]**                                         OPINION

Respondent summarizes his position as follows:

Generally, when a payment is made by a seller to a customer as an inducement to purchase property, the payment does not constitute income but instead is treated as a purchase price adjustment to the basis of the property. Pittsburgh Milk Co. v. Commissioner, 26 T.C. 707 (1956); Rev. Rul. 76-96, 1976-1 C.B. 23. In this case, however, petitioners did not purchase goods or property to which a basis adjustment may apply. Rather, they purchased cash equivalents, in the form of Visa gift cards, Reloads for the Green Dot card, and money orders, to which no such adjustment can apply. See Cowden v. Commissioner, 289 F.2d 20, 24 (5th Cir. 1961) (setting forth the cash equivalence doctrine); Bixby v. Commissioner, 58 T.C. 757 (1972) (cash equivalents have basis equal to face value). As a result, the Reward Dollars paid to petitioners as statement credits for the charges relating to cash equivalents are an accession to wealth and income to petitioners under I.R.C. § 61.

Petitioners' position is as follows:

The IRS [Internal Revenue Service] proposes to tax Mr. Anikeev's rewards points because he did not earn them by acquiring goods or services. The IRS' position is: "rewards generated where no goods or services are purchased are taxable. Thus rewards generated by the purchases of gift cards and then the purchases of money orders, without the purchase of any goods or services are taxable." The manner of purchase of something, however, does not constitute an accession of wealth. Applying I.R.C. § 61, the rewards points would be taxable when received, not based on how the gift cards were later used. What Mr. Anikeev later used the gift cards (which are a product, given that they have a Universal Product Code) to purchase should not matter.

**[\*12]** We note the difference in respondent's description of his position and petitioners' description of respondent's position. Petitioners quote an interrogatory response by respondent, and respondent never denies that this describes his position.

Section 61(a) broadly defines gross income. It has a "sweeping scope". Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995) (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955)). On the other hand, adjustments to the purchase prices of goods or services have consistently been considered nontaxable. Pittsburgh Milk Co. v. Commissioner, 26 T.C. 707 (1956) (addressing income of the seller of goods who provided price reductions); Rev. Rul. 76-96, 1976-1 C.B. 23, as modified by Rev. Rul. 2005-28, 2005-1 C.B. 997.

Rev. Rul. 76-96, supra, is a key link in the chain of IRS reasoning on credit card rewards. It concerned the tax treatment of rebates paid by an automobile manufacturer to qualifying retail customers who purchased its automobiles. Rev. Rul. 76-96, supra, held that the receipt of the rebate by the retail customer did not result in the receipt of gross income. Rather, the rebate was a reduction in the purchase price, requiring a downward adjustment to the basis of the automobile pursuant to section 1012.

**[*13]** At the outset of the trial of this case, respondent's counsel said: "And it's a long-standing IRS policy, Mr. Sklarz is right, long-standing IRS policy is that card rewards are not taxable. And the rationale for that is that the reward itself acts as a discount on whatever property or services are being purchased by the consumer."

This policy reflects the recognition that a taxpayer who avails himself or herself of a discount in acquiring goods and services has no accession to wealth. That taxpayer has retained more of his or her wealth than a taxpayer who pays full price for the same good or service, but that taxpayer has no additional income; he or she simply has reduced consumption. Although as Benjamin Franklin wisely observed, "[a] penny saved is two pence clear" (which became known more colloquially as "a penny saved is a penny earned"), the income tax law imposes a tax only on the future penny earned, not on the current penny saved.

This case rests squarely in the legal chasm between the basic principle to broadly define income and respondent's own policy. Petitioners' aggressive efforts to generate Reward Dollars have created a dilemma for respondent which is largely the result of the vagueness of IRS credit card reward policy. Petitioners clearly acquired economic benefits by cleverly and relentlessly manipulating the Rewards Program. Their actions never offended American Express and had Mr. Anikeev not been so successful in his efforts he likely would have been ignored by

**[\*14]** the IRS.  However, the scale of his success in acquiring rewards makes this case an extreme test of the longstanding nontaxability of credit card reward programs.  To avoid offending his own longstanding policy respondent seeks to apply the cash equivalence concept.  As we will explain herein we do not find it is a good fit.

Most of petitioners' transactions were for Visa gift cards.  The issue as presented by the parties regarding the Visa gift cards turns on which event is the focus of our inquiry, the purchase of the gift cards (petitioners' focus) or their later use of the gift cards to purchase money orders (respondent's focus).

Respondent's pretrial memorandum asserts as an alternative position the analysis of Rev. Rul. 76-96, supra, which would tax as income the gains on petitioners' purchases of money orders with Visa gift cards, reducing petitioners' bases in the Visa gift cards by the Reward Dollars they received on the purchases of the Visa gift cards.  Respondent later abandoned this alternative position, although it would appear to be more compatible with the rationale of the IRS credit card reward policy.  Under Rule 31(c), a party may plead in the alternative, and the alternative positions need not be consistent.  Respondent declined to pursue an alternative position, and we should not assume to do it for him.  Rather, we must properly apply the law including IRS policy not to include credit card

[*15] rewards in income to the parties' positions and not expand established common law to accommodate respondent's attempt to limit his own policy. The IRS having established a longstanding policy, respondent must be held to the terms of that policy and we will apply those terms as previously made public.

Petitioners allege that the gift cards are goods and services and their subsequent use is irrelevant. Respondent argues that the gift cards are cash equivalents because of petitioners' intended use of the cards to purchase money orders.

The rebate rule, as set forth in IRS guidance, states that a purchase incentive such as credit card rewards or points is not treated as income but as a reduction of the purchase price of what is purchased with the rewards or points. Rev. Rul. 76-96, supra; see IRS Publication 17, Your Federal Income Tax 94 (2015) ("A cash rebate you receive from a dealer or manufacturer of an item you buy is not income, but you must reduce your basis by the amount of the rebate. * * * You buy a new car for $24,000 cash and receive a $2,000 rebate check from the manufacturer. The $2,000 is not income to you. Your basis in the car is $22,000. This is the basis on which you figure gain or loss if you sell the car and depreciation if you use it for business."). Utility rebates are treated the same way:

[*16] If you are a customer of an electric utility company and you participate in the utility's energy conservation program, you may receive on your monthly electric bill either:

- A reduction in the purchase price of electricity furnished to you (rate reduction), or

- A nonrefundable credit against the purchase price of the electricity.

The amount of the rate reduction or nonrefundable credit is not included in your income.

IRS Publication 17, supra, at 97.

The Visa gift cards were quickly converted to assets that could be deposited into petitioners' bank accounts to pay their American Express bills. The Reward Dollars are distinguishable from the noncash awards or "Thank You Points" earned in connection with maintaining a bank account in Shankar v. Commissioner, 143 T.C. 140 (2014). In that case we held that redemption of the noncash awards in exchange for an airline ticket resulted in income equal to the value of the ticket for the year in which the awards were redeemed. We compared the rewards to interest income. The bank had issued Form 1099-MISC, Miscellaneous Income, on the basis of the value of the airline ticket in the year in which the taxpayer redeemed the awards. Unlike the present case, the awards

[*17] were not an incentive or rebate based on credit card purchases. The Reward Dollars are not in the nature of interest income.

Respondent's assertion of the inclusion in income of Reward Dollars turns on the ultimate use of the Visa gift cards. Because petitioners used the Visa cards to buy money orders to generate deposits to their bank accounts, respondent contends that petitioners have purchased cash equivalents.[2] Visa gift cards are not redeemable for cash or eligible for deposit into a bank account, which is why petitioners used them to purchase money orders. The benefit provided by allowing a gift card as a substitute for a credit card is conveniently overlooked in respondent's denial of "product" treatment to the gift cards, which depends completely on petitioners' failure to purchase goods or services. Providing a substitute for a credit card is a service via a product which is commonly sold via displays at drug stores and grocery stores. American Express treated such purchases as eligible for Reward Dollars throughout the years at issue. Respondent ignores this, implying that the purchases should not have qualified for Reward Dollars. He points to petitioners' intended use of the cards, but whatever petitioners' intent they paid fees to acquire the gift cards and the convenience

[2]On occasion petitioners paid their American Express bills using MoneyGram's money transfer services and paid MoneyGram with a reloadable debit card.

[*18] embodied in them. The fees were not a function of petitioners' or any customers' intended use of the gift cards.

As stated previously, respondent has not argued that petitioners must recognize gain on the exchange of the gift cards. Theoretically, on the basis of established precedent, the Reward Dollars reduced petitioners' bases in the Visa gift cards that they purchased, and petitioners generated proceeds when they converted the cards to money orders. To the extent the rebates exceeded the fees charged to acquire the gift cards, it seems that gain was generated similar to the gain that a purchaser of the rebated automobile would generate if the vehicle was sold for more than the purchase price reduced by the rebate. Thus, it would appear that the taxable event would not be the receipt of Reward Dollars upon the purchase of their Visa gift cards but the transformation of the cards into cash equivalents that could be deposited in a bank account. See Wentz v. Commissioner, 105 T.C. 1, 11 (1995) (considering the discrete severable events that made up a transaction that generates a purchase price adjustment).

Respondent asserts that petitioners' Reward Dollars were not purchase price adjustments but rather cash equivalents that are property equal to their face values. He argues that no price adjustment is possible for the gift cards because cash equivalents have basis equal to their face values. See Bixby v. Commissioner, 58

**[\*19]** T.C. 757, 785 (1972); see also UFE, Inc. v. Commissioner, 92 T.C. 1314, 1328-1329 (1989) ("Cash or cash equivalent items * * * are accorded basis at face value."); Felt v. Commissioner, T.C. Memo. 2009-245, slip op. at 15 (stating that notes are cash equivalents with basis equal to face value), aff'd, 433 F. App'x 293 (5th Cir. 2011).

We have relied on the cash equivalency doctrine to evaluate the proper timing of income recognition when a taxpayer receives a contractual right to receive payment in the future. See Cowden v. Commissioner, 289 F.2d 20 (5th Cir. 1961), rev'g and remanding 32 T.C. 853 (1959); Griffith v. Commissioner, 73 T.C. 933, 937 (1980); Watson v. Commissioner, 69 T.C. 544, 549-552 (1978), aff'd, 613 F.2d 594 (5th Cir. 1980); W. Oaks Bldg. Corp. v. Commissioner, 49 T.C. 365, 376 (1968); Ennis v. Commissioner, 17 T.C. 465, 470 (1951). A debt obligation is a cash equivalent where it is a "promise to pay of a solvent obligor and the obligation is unconditional and assignable, not subject to set-offs, and is of a kind that is frequently transferred to lenders or investors at a discount not substantially greater than the generally prevailing premium for the use of money". Cowden v. Commissioner, 289 F.2d at 24. The doctrine's application thus far has been limited to determining the timing of income recognition. Nevertheless, we find that the three types of transactions in this case simply fail to fit the definition

**[*20]** in <u>Cowden</u>, the seminal case. The cash equivalency doctrine implicitly recognizes that the debt obligation being evaluated is property and stands for the proposition that the form of the contractual right to future payment is not controlling. <u>See</u> <u>Warren Jones Co. v. Commissioner</u>, 524 F.2d 788, 790 (9th Cir. 1975) (stating that under the doctrine a cash basis taxpayer must report income received in the form of property only if the property is a cash equivalent), <u>rev'g and remanding</u> 60 T.C. 663 (1973).

The most recent case respondent cites regarding cash equivalents is <u>Felt v. Commissioner</u>, T.C. Memo. 2009-245. In <u>Felt</u>, we described the application of the cash equivalent concept to a note that was a promise to pay by a solvent obligor. <u>Id.</u>, slip op. at 14-15. Reward Dollars petitioners received were not notes, but they were commitments by American Express to allow petitioners credits against their card balances. Respondent's analysis leaps to the cash equivalence position without an analysis of the origin of the Reward Dollars. Respondent's position holds weight only if the Reward Dollars were not an effect of the purchase price of goods and services. Otherwise, all Reward Dollars would be taxable as cash equivalent income. American Express offered the Rewards Program as an inducement for card holders to use their American Express cards. For his own reasons respondent has made a conscious choice to avoid the application of a

[*21] rebate analysis to the taxability of the cash rewards as a reduction of basis. In conclusion, we hold that the Reward Dollars associated with the Visa gift card purchases were not properly included in income.

However, petitioners' direct purchases of money orders and reloads of cash into the debit cards using the American Express cards presents a different question from the purchase of Visa gift cards. The Visa gift cards have product characteristics. They provide a consumer service embodied in a simple plastic card for convenience. The Visa gift cards are not redeemable for cash, but the money orders purchased with the American Express cards and the infusion of cash into the reloadable debit cards are difficult to reconcile with the IRS credit card reward policy. No product or service is obtained in these uses of the American Express cards other than cash transfers. The money orders are not properly treated as a product subject to a price adjustment because they were eligible for deposit into petitioners' bank account from acquisition. Similarly, the cash infusions to the reloadable debit cards were not product purchases. The reloadable debit cards were used for Moneygram transfers, which are arguably a service. However, the Reward Dollars in dispute were issued for the cash infusions, not the transfer fees. Therefore, we uphold respondent's inclusion in income of the related Reward

[*22] Dollars for the direct purchases of money orders and the cash infusions to the reloadable debit cards.

We note that the above holdings are not based upon the application of the cash equivalence doctrine but rather the incompatibility of the direct money order purchases and the debit card reloads with the IRS policy excluding credit card rewards for product and service purchases from income. These holdings are based on the unique circumstances of this case. We hope that respondent polices the IRS policy in the future in regulations or public pronouncements rather than relying on piecemeal litigation.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.